## STATE v. NATHAN McNEILL.

### (Filed 16 November, 1921.)

**Intoxicating Liquor—Spirituous Liquor—Unlawful Sale—Statutes—Evidence—Reputation.**

Where there is substantive evidence tending to show the guilt of the defendant in having spirituous liquor for sale in violation of C. S., 3378, and his defense, supported by his evidence, is that some one else had taken the jugs and bottles of whiskey to his home in his absence, without his knowledge, where the officer had found them, the general bad reputation of the defendant for unlawfully selling whiskey may be shown as a circumstance in corroboration of other evidence tending to show guilt. C. S., 3383.

HOKE and STACY, JJ., dissenting.

APPEAL by defendant from *Ray, J.,* at May Term, 1921, of SCOTLAND.

The defendant was indicted and convicted under a charge of having in his possession spirituous and intoxicating liquors for sale, and from the judgment thereon appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Walter H. Neal for defendant.*

CLARK, C. J. The indictment charged that the defendant "unlawfully and willfully did have and keep in his possession, for the purposes of sale, certain spirituous and intoxicating liquors." The evidence for the State was as follows:

Lamar P. Smith, deputy sheriff, testified for the State: "I went up to the defendant's house and I drove up in the yard. There was a man there; there were several in the yard. Lee McNeill and two other fellows, and one woman, I believe, and I noticed one of those fellows go over to some bushes like they wanted to hide something, and I asked him what he hid, and then I walked to where he went and found two quarts of whiskey there where he had stuck it down in the broom straw, and I brought it back and went in the house and found in the kitchen two jugs.

I believe that the man who walked out there to the bushes said his name was McLean, and I went in the house and there was two jugs in there that smelled strong with whiskey, sitting in a little kitchen. They were gallon jugs, and under the table I found a quart pot and funnel that was wet with whiskey, looked like it had just been poured out, and that smelled strong with whiskey, and right outside the kitchen door, at the bottom of the steps, I found a ten-gallon keg and it was also strong with whiskey, and while I was in the yard I saw a fellow leave

the yard and go behind the garden toward the little ditch; and I went around there and found a gallon jug full of whiskey, and I brought it back and there was about a quart of whiskey out of the jug. I was by myself. This was at the defendant's house. I searched his house one other time and found a quart of blockade whiskey in a jug.

Q. Look over these items and jugs and things here and state how much of it you found at Nathan McNeill's house?

A. I found it all there. I found these two bottles and this jug is the one I found in the ditch. These other two jugs were in the kitchen and this funnel and the measuring cups were on the table.

Q. Is that liquor in there? It looks like kerosene.

A. It smells like whiskey. This is the jug I found and it smelled high with whiskey."

The State then introduced in evidence the jugs, bottles, measuring cups, funnel, and other articles and exhibited before the jury.

CROSS-EXAMINATION

This defendant then testified that the diagram then submitted to him was a reasonably correct diagram of the premises and surroundings starting up at Mr. Fairley Patterson's.

I found a part of the liquor in the house. I found in the house what is in these two jugs. They smelled strong of whiskey.

Q. How much is there of it?

A. A quart, maybe.

Q. Between a quart and a pint in both of them. Is there a ditch that runs sorter catty-cornered from Nathan's house? Now will you please indicate on the plat about where the garden is?

A. Right along there (pointing out the ditch on the diagram). I found the glass jug of liquor in the ditch right back of the garden. The whiskey which I found in the briars or bushes was not in that direction at all. It was back on the opposite side of the house. The man who had it was standing in the yard when I drove up, and he walked to the bushes.

I think he said his name was McLean. I do not remember. He was the one who had the two pints of whiskey. I think it was ten or fifteen steps in the briars and about that far from the road where I found the two pints of whiskey. I found it in the briars. I saw him go down there like he wanted to hide something, and when he came back I went to see what he had hid, and that is what I found. Nathan McNeill was not at home. I do not know who carried these receptacles and jug and the measuring pot and other things to the house, and I do not know who was in charge of the keys of this house. I found these things in the kitchen, and just outside the kitchen there was a wagon standing next to the garage, which had some household goods on it. . . . State rested.

The evidence for the defendant was an attempt to show that the whiskey found in the ditch was not on the defendant's land, but just over the line, and that the whiskey and vessels were carried to the defendant's house that day while he was away.

In rebuttal, the deputy sheriff was asked, "State, if you know, what the general reputation of Nathan McNeill's place is relative to selling whiskey." Over the defendant's objection, the sheriff was allowed to testify, the court adding, "If it has such a general reputation," and the sheriff responded, "Yes; it is bad. It has been bad for several years." On this, the court said: "Gentlemen, that is allowed, not as primary or substantive evidence, but merely to corroborate, if it does corroborate or tend to corroborate this witness in that he found the articles which the State has introduced in evidence here, consisting of two or three bottles of whiskey, jugs, and a keg and measuring pot and funnel, which the State contends, and the witness testifies, smelled of whiskey, if it tends to corroborate him, and is allowed for that purpose only." The court refused a motion to strike out the above question and answer thereto, and defendant excepted.

Another witness, Manly Russell, testified to the same effect that he "knew the general character of Nathan McNeill's place as to the sale of whiskey, that is what the people say about his place, and that it was bad." The defendant objected to the question, and moved to strike it out, and excepted from the refusal to do so, the court saying to the jury: "Gentlemen, this evidence is allowed to corroborate the witness Smith, who went on the stand and testified that he found the liquor offered in evidence here, and is allowed for the purpose of corroborating, if it corroborates or tends to corroborate, and for that purpose only."

These questions were not asked as to the general reputation of the defendant, and would have been incompetent for that purpose, for he had refrained from going upon the stand, but they were admitted in corroboration of the State's evidence, which tended to prove that the whiskey and the vessels being found on the premises of the defendant were in his possession, and the evidence was pertinent and important for that purpose, as tending to show that this place was in effect a well known illicit place for the sale of liquor, and was competent like evidence of previous transactions of the same kind in corroboration.

C. S., 3378, under which the defendant was indicted, is as follows: "3378. *Handling liquor for gain.* It is unlawful for any person, firm, corporation, or association by whatever name called, to engage in the business of selling, exchanging, bartering, giving away for the purpose of direct or indirect gain, or otherwise handling spirituous, vinous, or malt liquors in the State of North Carolina."

The illicit sale of liquor being done usually clandestinely, secretly, and by resort to many evasions and ingenious devices, the law-making power found it necessary to enact C. S., 3383, referring to above section 3378, as follows: "3383. *Indictment and proof.* In indictments for violating the first section of this article (C. S., 3378), it shall not be necessary to allege a sale to a particular person, and the violation of law may be proved by circumstantial evidence as well as by direct evidence." The evidence introduced by the defendant was an attempt to prove that the liquor found at that place was not the property, or under the control of the defendant. The evidence of the general reputation that it was a notorious place used by him for that purpose was therefore properly admitted as "a circumstance" tending to corroborate the inference to be drawn from the testimony of the officer that the defendant is responsible. There was no attempt to convict the defendant by show-, ing the bad reputation of his place as a whiskey resort, but merely to corroborate the inference which would naturally arise that the defendant was responsible for the liquor found on his premises, which inference the defendant had attempted to rebut by evidence tending to show that he was away that day, and that the whiskey, and the jugs and vessels had been brought there without his connivance. The general reputation of the defendant's house as a notorious place for the illicit sale of whiskey was "circumstantial evidence" to corroborate the inference arising upon the testimony of the officer of finding the whiskey and vessels at the defendant's house.

Four other witnesses, Mack Patterson, S. H. Dunlap, C. C. Sneed, and E. P. Covington also testified that they "knew the general reputation of Nathan McNeill's place as to the sale of whiskey, and it was bad, and had the reputation of being a notorious liquor place." The testimony of each of these, when offered, the court admitted over the defendant's exception, but cautioned the jury in each instance: "This evidence is allowed to go to you for the purpose, as I have explained before, of corroborating the witness Smith, and the exhibits offered, if it does corroborate or tend to corroborate them, and is allowed for your consideration for that purpose only."

The court further, in the charge, charged the jury fully as to reasonable doubt, and the burden of proof. He stated fully the defendant's contention that he had no whiskey there—that he was absent from home at work at the time, and only returned afterwards, and added that by reason of the rule laid down in *S. v. Ingram,* 180 N. C., 672, he had "allowed the State to offer for consideration of the jury, the reputation of the home of the defendant as to keeping liquor for sale—the general reputation. This testimony is allowed, not to prove its character other than the day in question, but to corroborate the witness Smith, and to

corroborate the amount of whiskey which the State alleges and contends was found at his place. It is not direct or substantive evidence, but is allowed for the purpose of corroborating, if it does corroborate or tends to corroborate the witness Smith, and to strengthen his testimony and to corroborate by the amount of whiskey that was found there that day, and in evidence as an exhibit, and it is allowed to the jury solely for that purpose and predicated upon the doctrine laid down in *S. v. Ingram, supra,* and to be considered by the jury in that light."

In *S. v. Ingram,* 180 N. C., 673, on an indictment for the sale of intoxicating liquors, the State was allowed to introduce such testimony as the learned judge admitted in this case, this Court saying: "The evidence of drinking in the crowds frequenting the place of business of the defendant was competent in corroboration of the witness Norton, who testified to the sale and whose testimony was impeached. In *S. v. Mostella,* 159 N. C., 459, one of the questions asked the witness was, 'State the character of the people that usually frequent this pool room.' This was asked to show drunkenness about the premises, and was admitted and affirmed on appeal." In the present case the whiskey and jugs and other vessels found on the premises were in proof in corroboration of the testimony of the deputy sheriff and to rebut the defense set up by the defendant's witnesses (the character of some of whom was shown to be bad), that the defendant was absent that day, and that hence there was no presumption against him of possession or responsibility. The State was allowed to show, on the above authority, by at least six witnesses that the defendant's place had the general reputation of being used by him for the sale of whiskey. This was as pertinent as testimony of defendant's absence that day from which he sought to draw an inference that he was not responsible.

In *S. v. Price,* 175 N. C., at p. 807, *Walker, J.,* in a very learned opinion, with full citation of authorities, showed that the reputation of a house is competent on indictments for keeping a house of ill fame, independent of our statute to that effect, saying: "It is only a circumstance which the jury are permitted to consider in passing upon the defendant's guilt." Neither in that case nor in this would the reputation be sufficient for conviction, and the judge in this case was careful to caution the jury on the admission of the evidence of each of the six witnesses who testified to the bad reputation of this place for the sale of whiskey, and again repeated the caution in his charge, that it could be only considered as a circumstance in corroboration of the inference arising from the evidence of the sheriff as to the whiskey and vessels being found at the defendant's home, which it was sought to contradict by the testimony that others than the defendant owned the whiskey.

STATE *v.* MCNEILL.

The same principle seems to be universally recognized. In 16 Cyc., 1209, it is said: "Reputation is relevant when it arises in a community acquainted with the facts upon subjects in which the general community is interested, and concerning which it has no motive to misrepresent. Where these two conditions are fulfilled, reputation may be more probative than a mere unsworn statement. The fact that the statements on a matter of general interest have been so uniform, reiterated, and dominant against all counter statements as to create a general reputation throughout the community may well give rise to an inference," enumerating as "among them" a long list of subjects concerning which reputation has been held admissible. The scope of the subjects as to which reputation has been held admissible will certainly embrace the general reputation that a place was known generally as one at which liquor was habitually sold upon the circumstances of this case. 16 Cyc., 1209, 1210, quotes in the notes authority that "general reputation is not a form of hearsay, but in itself a relevant circumstance in many instances." On page 1211 it is pointed out that "The elements of relevancy and necessity are prerequisite to the admissibility of reputation as evidence, and hence specific facts of limited general interest cannot be established in that way."

In this case, where the defendant sought to show by the testimony offered that he was away from home when the whiskey and jugs were found there, and by the testimony of other parties to rebut the inference of his ownership or control of the whiskey and jugs it was competent, as corroborating testimony, to show as a circumstance the general reputation that the house was "notorious" as a place for the illegal sale of whiskey. The weight of all the testimony was for the jury.

In McKelvay on Evidence (2 ed.), sec. 126, it is stated that while reputation for a particular act is not general reputation, and such evidence not admissible on the question of the truth of the charge, general reputation would be legitimate to establish many matters of public interest or notoriety.

On the disputed question at issue, upon the evidence as above stated, the general reputation of the defendant's house as a place notorious for the illicit sale of whiskey was a "circumstance," which, under C. S., 3383, the jury were entitled to consider in corroboration of the State's evidence, it having been restricted by the judge to be strictly in corroboration only if the jury believed it, of the inference the jury could draw from the testimony of the deputy sheriff as to the finding of the liquor, jugs, and other vessels, upon the defendant's premises.

No error.

HOKE and STACY, JJ., dissenting.