STATE v. F. R. SPRINGS.

(Filed 20 December, 1922.)

**1. Intoxicating Liquor—Spirituous Liquor—Criminal Law—Evidence—Hearsay Evidence—Statutes.**

Hearsay evidence, with certain recognized exceptions, is not admissible in the trial of issues determinative of substantial rights, unless coming within certain recognized exceptions or expressly made so by statute, and particularly is this rule applicable in criminal cases, where the life or liberty of the individual is put in jeopardy, such testimony being essentially liable to abuse, and not being the direct testimony of the witness himself upon oath, subject to cross-examination, but the alleged declarations of one who is absent and not subject to these requirements of the law. *S. v. McNeill*, 182 N. C., 853, cited and overruled.

**2. Same.**

Upon the criminal trial for having in possession spirituous liquor for the purposes of sale, C. S., 3379, and for unlawfully receiving more than one quart within fifteen consecutive days, C. S., 3385, evidence of the reputation of the defendant's place as being bad for selling liquor is unauthorized by statute, C. S., 3383, and it is purely hearsay and incompetent; and testimony of this character, admitted on the trial over the defendant's objection, and submitted in the charge as an independent circumstance to show guilt, under defendant's exception, constitutes reversible error. *S. v. Mills, ante,* 694.

CLARK, C. J., dissenting.

APPEAL by defendant from *Long, J.,* at September Term, 1922, of UNION.

Criminal action, tried on appeal from the recorder's court.

The warrants on which defendant was tried, as finally amended, charged an unlawful keeping of spirituous liquors for purposes of sale, C. S., art. 4, sec. 3379, and unlawfully receiving more than one quart within fifteen consecutive days from persons other than common carriers, C. S., art. 5, sec. 3385. There were facts in evidence tending to show that in May, 1921, defendant had rented and occupied a place of business in Monroe, N. C., as undertaker, the house having a front room used as an office and a rear room with a partition made by coffin boxes, and in this rear room there were two beds on opposite sides and with a trunk near each, one of the beds being used by defendant when in Monroe and the other used at time place was raided, in February, 1922, by one Walter Moseley, a lodger, occupying as such by agreement with Springs. That defendant had another place of business of the same kind in Lancaster, S. C., where he spent about one-half of his time. That defendant occupied place in Monroe from May, 1921, to October, 1921, alone, and during that time no complaint was made of place. That in October, Walter Moseley having become dissatisfied with his living place,

STATE *v.* SPRINGS.

applied to Springs to have a bed and sleeping room in defendant's place in Monroe, and after that time some complaints were made of disorders at this place. That these complaints were made known to Springs when he had come to Monroe from Lancaster, and he said he would see that it was stopped. That in February, 1922, the officers, with a warrant, searched Springs' place and found in the rear several empty tin cans along one of the walls, which showed odor of whiskey, and in Moseley's trunk at the foot of his bed, on being opened by the officers, there were found eight bottles of whiskey from one-half pint to a quart in size. That Springs made no resistance to the search, but assisted therein, and on finding the whiskey in Moseley's trunk, Springs said that Moseley must have brought it there.

There was evidence further that when both defendant and Moseley were under arrest, Moseley said to Springs: "You needn't deny it. We were both in it fifty-fifty." Which statement Springs denied, Springs himself testifying to this said he didn't hear Moseley make this statement, but understood the sheriff, Fowler, to make it, and that he immediately denied it.

There were several witnesses who testified to the good character of defendant both in Monroe and Lancaster, several business men, including an alderman of the city, testifying that living near and passing Springs' place of business several times a day, they had not noted any disorder, and others that no complaint was made of the place till after Moseley went to stay with him. Over defendant's objection the State was allowed to prove by several witnesses, and same was received as substantive evidence, that Spring's place had a bad reputation for whiskey selling. A witness, by the name of H. S. Christmas, testified that he had a store opposite the Springs place of business, that Springs spends the greater part of his time in South Carolina, his character was good, and that he had never seen any evidence that whiskey was being handled at Springs' place when he was there.

There was verdict of guilty, judgment, defendant excepted and appealed, assigning for error his exceptions duly noted:

1. To the reception of evidence that the reputation of Springs' place was bad for selling liquor.

2. That his Honor, in the charge, submitted this as substantive evidence of defendant's guilt.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Vann & Milliken for defendant.*

HOKE, J. With certain recognized exceptions, applicable chiefly in civil causes, and unless expressly made so by statute, hearsay evidence is

49—184

not competent in the trial of issues determinative of substantive rights, a position particularly insistent where such issues involve the life or liberties of the litigant. *King v. Bynum,* 137 N. C., 491; *Hopt v. The People of Utah,* 110 U. S., 574; *Mima Queen v. Hepburn,* 11 U. S. (7th Cranch), 290; 1st Elliott on Evidence, secs. 315-319; 1 Greenleaf (16 ed.), sec. 99 a; Lockhart on Evidence, sec. 138; Wharton's Criminal Evidence (9 ed.), sec. 225.

In testimony of this character, so essentially liable to abuse, the witness is giving, not his own evidence under oath, but what he has heard some other person say, and among many other reasons, the evidence is objectionable because the declarant, who is the real witness, has not spoken under the sanction of an oath, and the party affected has not been afforded the opportunity to cross-examine the witness. Speaking to some of the principle objections to such evidence, Professor Greenleaf, *supra,* says:

"Subject to these qualifications and seeming exceptions (to be later examined), the general rule of law rejects all hearsay reports of transactions, whether verbal or written, given by persons not produced as witnesses. The principle of this rule is that such evidence requires credit to be given to a statement made by a person who is not subjected to the ordinary tests enjoined by the law for ascertaining the correctness and completeness of his testimony; namely, that oral testimony should be delivered in the presence of the court or a magistrate, under the moral and legal sanctions of an oath, and where the moral and intellectual character, the motives and deportment of the witness can be examined, and his capacity and opportunities for observation, and his memory, can be tested by a cross-examination. Such evidence, moreover, as to oral declarations, is very liable to be fallacious, and its true value is, therefore, greatly lessened by the probability that the declaration was imperfectly heard, or was misunderstood, or is not accurately remembered, or has been perverted. It is also to be observed that the persons communicating such evidence are not exposed to the danger of a prosecution for perjury, in which something more than the testimony of one witness is necessary in order to a conviction; for where the declaration or statement is sworn to have been made when no third person was present, or by a person who is since dead, it is hardly possible to punish the witness even if his testimony is an entire fabrication."

And in *Mima Queen v. Hepburn, supra,* Chief Justice Marshall, speaking to the subject, said: "It was very justly observed by a great judge that 'all questions upon the rules of evidence are of vast importance to all orders and degrees of men; our lives, our liberty, and our property are all concerned in the support of these rules, which have been

matured by the wisdom of ages and are now revered from their antiquity and the good sense in which they are founded.' "

"One of these rules is that 'hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony, which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible.

"To this rule there are some exceptions which are said to be as old as the rule itself. These are cases of pedigree, of prescription, of custom, and, in some cases, of boundary. There are also matters of general and public history which may be received without that full proof which is necessary for the establishment of a private fact."

The principle referred to and commended by these authorities applies to prosecutions for offenses against the prohibition laws, and in cases like the present, is held to exclude evidence of general reputation of the place where the specific offense is alleged to have been committed, unless, as stated, it has been made competent by some valid statute on the subject. *Cobleigh v. McBride et al.,* 45 Iowa, 116; 4th Elliott on Evidence, sec. 3170; 23 Cyc., p. 251.

In this last citation it is said: "The character of the place kept by defendant may be shown by circumstantial evidence tending to show the purpose for which it was used or the kind of business carried on there, but evidence of the reputation of the place, or what people say as to its character or uses, should not be admitted, except where a statute makes such reputation a pertinent fact in the prosecution, or declares it to be competent evidence." And there is, too, direct decision with us that where evidence of the kind in question is incompetent because of being hearsay, the infirmity is not removed by terming it or offering it in corroboration. *Holt v. Johnson,* 129 N. C., 138.

In the recent case of *S. v. McNeill,* 182 N. C., 853 and 860, the Court was not properly advertent to the well established and wholesome principle in the laws of evidence excluding hearsay in the trial of causes of this character, and the case in that respect and for that reason must be considered as disapproved.

The case of *S. v. Price,* 175 N. C., 804 and 806, to which we were also cited, in no way militates against our present ruling, for the charge there was for vagrancy in keeping a bawdy house, and in reference to which our statute, C. S., 4347, expressly makes the general reputation of the house admissible and competent. The only statute claimed to have any possible bearing on the question, C. S., 3383, authorizing a conviction on "circumstantial as well as direct evidence," seems to refer exclu-

sively to prosecutions under C. S., 3378, which prohibits engaging in the business of selling, etc., or otherwise handling spirituous liquors for the purpose of gain, while defendant in the present case is indicted under sections 3379 and 3385, which constitute distinct and separate offenses, and if this section 3383 could be given a broader significance, we are of opinion that its purpose and effect is merely to relieve the prosecution of the necessity of offering direct evidence of any specific sale, and did not and was not intended to make any change in the kind and character of the circumstances as heretofore considered pertinent in the issue. A proper illustration of the true meaning of the section appears in *S. v. Ingram,* 180 N. C., 672, where the State was allowed to prove that drinking crowds were in the habit of frequenting defendant's place of business. And to the same effect was the question—answer admitted in *S. v. Mostella,* 159 N. C., 459, to wit: "The character of the people that usually frequented defendant's pool room." Question asked and admitted to show drunkenness about the premises. These were both objective facts given in by sworn witnesses, clearly relevant as tending to show the offense charged, and could in no sense be considered as hearsay.

We have had occasion before during the present term, in *S. v. Mills ante,* 694, to advert to the great importance of adhering to rules and precedents established and recognized as necessary to insure a fair and impartial trial of men accused of crime both in the reception of evidence and otherwise, and we must hold that in permitting over defendant's objection three or four witnesses to testify that the reputation of defendant's place was bad for selling liquor, and in submitting same in the charge as an independent circumstance tending to show guilt, defendant has, in effect, been erroneously convicted by means of hearsay evidence, and is entitled to a new trial of the issue.

New trial.

CLARK, C. J., dissenting: The defendant ran an undertaking establishment in Monroe. There was, besides the storeroom, a room in the rear where the defendant slept. J. W. Spoon, chief of police, upon sworn information that the defendant's bedroom was a place of drinking and carousing at night, procured a search warrant on 4 February, 1922, and in company with two assistants searched defendant's room. The defendant showed surprise when the officer told him his business but told him to go ahead. The defendant jointly with a man named Walter Moseley occupied a large unceiled room at the back of the shop as a bedroom. In this room the officer found ten one-gallon tin cans setting around the wall. These cans smelled of whiskey. The defendant told the officer that Walter Moseley must have brought them in. At the

head of Springs' bed in this room was a trunk, which Springs admitted was his. This the officers searched and found nothing; but there was another trunk at the foot of the other bed in this room which Springs said was Moseley's. Springs told the officer that there was nothing in it, but the officer took the trunk into his confidence, shook it, and heard something rattle in it. He procured a key, unlocked this trunk, and found eight bottles of whiskey, from one-half pint to a quart in size. This whiskey was in court, and was identified by witnesses. This officer further testified that Walter Moseley had been staying with Springs, but he did not know how long; that the reputation of the place got worse after Moseley went there. The defendant told the officer that he went to Lancaster occasionally, but the officer was not able to say how much of his time the defendant spends in Lancaster.

The defendant, in his defense, alleged that Moseley put the whiskey there, or had it there, and he himself knew nothing about it. The defendant's exceptions are that the judge permitted testimony as to the reputation of Springs' place. The judge expressly confined the answer of the various witnesses to the general reputation of the premises, and not of the defendant himself. Each of the five witnesses swore that the reputation of the place was bad.

In *S. v. McNeill,* 182 N. C., 855, the Court held that in a case where jugs and bottles of whiskey were found at the defendant's house, and the defense was the not unusual one that some one else had taken them there in his absence without his knowledge, the general reputation of the defendant's place for unlawfully selling whiskey may be shown as a circumstance in corroboration of other evidence tending to show guilt. The word "place" was improperly omitted in the headnote. In that case it was said: "The illicit sale of liquor being done usually clandestinely, secretly, and by resort to many evasions and ingenious devices, the law-making power found it necessary to enact C. S., 3383, referring to above section 3378 (which made it unlawful to handle liquor for gain), as follows: '3383. *Indictment and proof.* In indictments for violating the first section of this article (C. S., 3378) it shall not be necessary to allege a sale to a particular person, and the violation of law may be proved by *circumstantial* evidence as well as by direct evidence.' The evidence introduced by the defendant was an attempt to prove that the liquor found at the place was not the property, or under the control of the defendant. The evidence of the general reputation that it was a notorious place used by him for the purpose was properly admitted as a circumstance tending to corroborate the inference to be drawn from the testimony of the officer that the defendant is responsible." This was a circumstance, and if the statute, C. S., 3383, which provides that the violation of law may be proved by *circumstantial evidence* as well

as by direct evidence was not intended to cure technical objections which are notoriously used by defendants in a matter of this kind, for what purpose could the statute have been enacted?

The fact that ten one-gallon tin cans smelling of whiskey were found in defendant's bedroom, and his untrue statement that the trunk, which the defendant alleged belonged to his room-mate, contained nothing, but on examination the officer found that it had therein eight bottles of whiskey, from a pint to a quart in size, was certainly evidence sufficient to go to the jury, and when the defendant alleged in defense that he knew nothing of the whiskey being on the premises, it was certainly *circumstantial evidence,* in the purview of the statute enacted to secure the enforcement of this statute, to show the reputation of defendant's bedroom as a place of drinking and carousal. How could he have been ignorant, as he said, of the whiskey being there if the jury believed the evidence of five witnesses to this effect. It was a "circumstance" which the statute gave them the right to consider. It was not a conclusive circumstance, but certainly it was evidence which under this statute was properly submitted to the jury.

The opinion of the Court insists that this recent decision in *S. v. McNeill, supra,* should be overruled, but for reason? It is a most potent circumstance where such defense is set up of one in whose room is found whiskey and empty whiskey cans setting around the walls, and the defendant insists that he was ignorant of their being on the premises.

In *S. v. Ingram,* 180 N. C., 672, another recent case, the Court "allowed the State to offer for the consideration of the jury that people frequenting the defendant's place of business were drinking." In that case the Court said that the testimony was competent in corroboration of the direct evidence tending to show the sale of whiskey.

In *S. v. Mostella,* 159 N. C., 459, *Hoke, J.,* the witness was asked: "State the character of the people that usually frequented this pool room." This was asked to show drunkenness upon the premises, and was admitted and affirmed on appeal.

As said in *S. v. McNeill, supra,* "In the present case the whiskey and jugs and other vessels found on the premises were in proof in corroboration of the testimony of the deputy sheriff, and to rebut the defense set up by the defendant's witnesses that the defendant was absent on that day." In this case the defendant was present, was an occupant of the room, the ten empty whiskey cans setting around the room, and the eight bottles of whiskey found in the trunk, which the defendant untruly told the officer contained nothing, were all evidence tending to show the defendant's guilt, and certainly was circumstantial evidence to show that the house, as set out in the search warrant, had a bad reputation for this crime of dealing in whiskey.

In *S. v. Price,* 185 N. C., 807, *Walker, J.,* in a very learned opinion with full citation of authorities, showed that the reputation of a house is competent on indictments for keeping a house of ill fame independent of our statute to that effect, saying: "It is only a circumstance which the jury are permitted to consider in passing upon the defendant's guilt." That case was cited with approval in *S. v. McNeill,* 182 N. C., 859, and the Court says: "The same principle seems to be universally recognized. In 16 Cyc., 1209, it is said 'reputation is relevant when it arises in a community acquainted with the facts upon subjects in which the general community is interested, and concerning which it has no motive to misrepresent. Where these conditions are fulfilled, reputation may be more probative than a mere sworn statement. The fact that the statements on a matter of general interest have been so uniform, reiterated, and dominant against all counter statements as to create a general reputation throughout the community, may give rise to an inference, enumerating as "among them" a long list of subjects concerning which reputation has been held admissible.' 'The scope of subjects as to which reputation has been held admissible will certainly embrace the general reputation that a place was known generally as one at which liquor was habitually sold upon the circumstances of this case.' 16 Cyc., 1209, 1210, quotes in the notes authority that 'general reputation is not a form of hearsay, but it is a relevant circumstance in many cases.' On p. 1211 it is pointed out that 'The elements of relevancy and necessity are prerequisites to the admissibility of reputation as evidence, and hence specific acts of limited general interest cannot be established in that way.' "

In McKelway on Evidence (2 ed.), sec. 126, it is stated that while reputation for a particular act is not general reputation, and such evidence not admissible on the question of the truth of the charge, general reputation would be legitimate to establish any matters of public interest or notoriety.

*S. v. McNeill, supra,* is a recent case, and there is no reason shown why it should be overruled. It is certainly in accord with the general law as quoted above from 16 Cyc., 1209, 1210, 1211, and the authorities quoted therein, and from McKelway on Evidence, *supra;* and is based, moreover, upon C. S., 3383, which was enacted to make more efficient the execution of the law against this crime. In that case it was said: "On the disputed question at issue upon the evidence, as above stated, the general reputation of the defendant's house as a place notorious for the illicit sale of whiskey was a 'circumstance' which, under C. S., 3383, the jury were entitled to consider in corroboration of the State's evidence."

The defendant, in his brief, relies on his exception to this evidence upon the ground that the judge did not restrict it to the matter in cor-

roboration, but the record does not show that the exception was placed upon that ground when made, but was a general exception to the testimony, which cannot be sustained in view of the numerous cases in our Court, a few of which have been cited above, which hold that it was competent at least as corroborative.

Rule 27 of this Court, 174 N. C., 835, was adopted to cure this very practice of excepting to evidence generally, and then on appeal putting it upon the ground that if the evidence was admissible it was as corroborative evidence only, and the jury should have been instructed to consider it only as such. To correct that, the Court, in the above Rule 27, prescribed: "Nor will it be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted." The record does not show, and it is not even suggested, that at the time it was admitted the court was asked to restrict it to be in corroboration, nor was there any prayer to so instruct the jury. This rule was a wise one, made by the Court within its constitutional power, and it has been frequently recited since as authority. It was adopted by the Court in 1904, and has been repeatedly cited by the Court, and is included in every revision of the rules down to the present.

The authorities above quoted would seem to establish that in our own Court and by general law the reputation of the defendant's place was competent at least as corroborative evidence, independent of our statute, C. S., 3383, which makes circumstantial evidence competent in such cases.

It does not appear in the record, nor even in defendant's exceptions, that the court admitted this as substantive evidence, or so charged the jury. There is no presumption that he did. The presumption is that there was no error, unless it is assigned and appears in the record.

In *Westfelt v. Adams,* 135 N. C., 600, the Court adverted to this Rule 27, stating that the amendment making evidence competent for any purpose not ground for exception for being admitted generally, "unless the appellant asks, at the time of admission, that its purpose should be restricted," had been adopted 16 March, 1904, and applied the rule, in a case which had been tried in the court below at the previous September Term, 1903. This rule was quoted and sustained in *Hill v. Bean,* 150 N. C., 437, and has been approved as authority since in many cases, among them *Tise v. Thomasville,* 151 N. C., 282; and among the later cases, *S. v. McGlammery,* 173 N. C., 750; *Beck v. Tanning Co.,* 179 N. C.; 127.

We see no reason why the general law as to the admission of testimony of the general character of a place in matters of this kind, and others, is not competent as corroborative evidence, calculated to throw light upon

the truth of the charge and proper for the jury to consider in coming to their conclusion; nor is there any force in the objection that the judge did not restrict the evidence to be considered as corroborative only when he was not asked to do so, as required by Rule 27, which has been affirmed so often.

This crime is an exceedingly profitable one to those who commit it, and counsel necessarily resort to every technicality, for, as a rule, the evidence either is sufficient to satisfy the jury or insufficient, and in the former case the only possible resort on appeal from a conviction is to some technicality. This crime was of sufficient importance for the people of this State on a *referendum* to forbid the handling of intoxicating liquors many years ago, and to cause the people of the whole Union by a more than two-thirds vote of both houses of Congress to enact a constitutional provision, which was ratified promptly by legislatures in all the states but two. The statute of this State has considered the efficient execution of this law of sufficient importance to provide that circumstantial evidence shall be competent, and that the defendant, convicted on a second offense, shall be guilty of a felony and subject to sentence in the State Prison. C. S., 3409.

The jury, upon this evidence, did not believe the defendant's statement that some one else brought the liquor into his room and used it illegally, all without the defendant's knowledge. There were but two rooms in the building, the store and the room occupied by the defendant and another party, who for some reason was not even put on trial. Indeed, he was not present when the officers, with the search warrant, entered the defendant's bedroom and found the defendant there alone, in company with the empty whiskey cans and a trunk full of whiskey.

The sheriff and others testified that Moseley stated to defendant that they were "fifty-fifty in the matter," and that the defendant did not deny it. The defendant said this statement was made to him by the sheriff and that he did deny it.

Upon the testimony this was a matter for the jury, and they have said that, beyond all reasonable doubt on the part of any one of the jury, the defendant was guilty.

The defense resembles very much the not unusual case of a defendant, who when found in possession of a stolen hog, says that he bought it from a "tall colored man, whom he did not know, along the road." In such cases, as in this, whether he did or not is a matter for the jury.