THE STATE v. CARRIE CHISENHALL.

*Abduction—Evidence—Witness.*

1. Fraud or force are not essential elements of the crime of abduction under the laws of this State.

2. The offence is sufficiently described by the word "abduct," and may be committed by violence, fraud or *persuasion.*

3. A statement made voluntarily by a person, against whom no charge is pending, to the Solicitor in reference to the commission of an offence by another, may be received in evidence against the author, who is afterwards indicted for the same transaction.

4. Evidence of the declarations of the father of the abducted child, showing his lack of consent to its carrying away, is competent against one charged with the abduction.

This was a CRIMINAL ACTION, tried before *Armfield, J.,* at Spring Term, 1890, of DURHAM Superior Court, upon an indictment for abduction.

Martha Chisenhall, a witness for the State, being sworn, testified as follows: "I am the mother of the defendant, and also of Eloise Chisenhall. Eloise lived with me and my husband in the town of Durham. She left my house last Sunday evening about 2 o'clock with the defendant and Mary Douglas. Carrie, the defendant, did not live with me. I went in about two hours to Carrie's house, and found the door locked. I then went to Mag Bush's porch. The defendant was there. I asked Mag to put Eloise out of her house. She said she was not there. I said: 'Yes she is there.' And I said: 'Mag, if you don't put my child out, I will bring somebody here to take her out.' She dared me to bring a policeman to her house. Carrie was sitting in the room. I did not go in the house. I made no effort to go in, and nothing was said to prevent me from going in. Defendant told me Eloise was there in the house. Eloise

staid there all night. I went back the same afternoon before sundown. Eloise was thirteen years old."

The State asked witness if her husband knew that she was going for Eloise? Defendant objected. Objection overruled. Defendant excepted, and witness testified:

"My husband knew I was going for Eloise, and concurred in it. When Eloise left my house, my husband was not in the house, but he was on the lot. The defendant, Eloise and Mary Douglas went out of the back door of the house. I made no objection. I knew Mary Douglas. My husband told me to go for Eloise as soon as he found out she was gone."

Defendant objected to this evidence, as she was not present. Objection overruled. Exception by defendant.

The State proposed to prove the general reputation of the house of Mag Bush by this witness.

Defendant objected. Objection overruled. Excepted by defendant.

Witness testified it was bad for men running after women there, and continued: "When defendant and Mary Douglas came on Sunday evening, they staid about half an hour, talking with me. I had no particular talk with them. Eloise had been to defendant's house before this, and she staid away from home all night before. She has left home with defendant before. Eloise did not come home until Tuesday morning."

Eloise Chisenhall, a witness for the State, testified: "I was at Mag Bush's last Sunday evening. I went with Carrie, the defendant, and Mary Douglas. She told me I could go with them, when we left home, or not, as I pleased. I wanted to go. Defendant did not tell me what they wanted with me. I saw Rhodes Herndon at Mag Bush's that night. He did not stay long. I heard my mother when she came to Mag Bush's that afternoon and told her to put me out. I did not want to go home. Herndon came about 8 o'clock."

W. M. Busbee, a witness for the State, testified : " On Tues-
day last, at the recess of the Court, I was in the office of the
Solicitor.   I am a Justice of the Peace.   I had tried the
warrant against Mag Bush for abduction.   Martha Chisen-
hall and the defendant were witnesses for the State against
Mag Bush.   I told these two witnesses to go to the Solicitor's
room.   I got there before the witnesses.   The defendant was
examined as a witness by the Solicitor in my presence.   The
bill of indictment had not then been sent against Mag
Bush, but the Solicitor wished to examine the witness.   I
remember the substance of the statement made by the
defendant."   The Solicitor then asked witness to give the
statement she made.

Defendant objected.   Objection overruled.   Defendant
excepted, and witness continued : " Defendant said she was
at the house of Mag Bush on Saturday night, and was asked
by Mag Bush and Herndon if she could get Eloise to come
to come to Mag's house to see Herndon.   She told them that
she could not get her that night, but would try to get her to
come next day ; that on Sunday she did go to her mother's
and get Eloise and take her to Mag's house ; that her mother
came to Mag's and asked Mag to put her out of the house ;
that Mag said she was not there.   Eloise got behind the door
when her mother came to Mag's.   She left the house, leav-
ing Eloise there ; that she did not see Eloise until next
morning ; that Eloise staid at Mag's house that night ; that
she came to her house on Monday and staid with her on
Monday and Monday night.   She said she knew the charac-
ter of Mag's house, and it was a ' whore-house.' "

Defendant objected to this evidence.   Objection overruled,
and exception by defendant.

The defendant introduced no evidence, and requested his
Honor, in writing, to charge the jury that, upon the evi-
dence, the defendant was not guilty.   His Honor declined
to charge as requested, and defendant excepted.

His Honor charged the jury that if they believe, beyond a reasonable doubt, that the defendant went to her father's house, where Eloise Chisenhall lived, and induced her to leave her father's house, and took her to the house of Mag Bush, under a previous arrangement with Herndon and Mag Bush, for an immoral purpose, and the father did not consent, then the defendant would be guilty.

To this charge the defendant excepted. The jury returned a verdict of "guilty," and from the judgment pronounced thereon the defendant appealed.

*The Attorney General* and *Mr. E. C. Smith*, for the State.
*Mr. J. S. Manning*, for the defendant.

SHEPHERD, J.: The statute (*The Code*, § 973) under which the defendant is indicted is different from the English and some of the American enactments upon the subject, in that fraud and force are not necessarily constituent elements of the offence, and it is silent as to the taking being against the consent of the parent or other custodian of the child. Many of the refinements of construction to be found in the text-books, illustrated by the various decisions, have, therefore, but little application to the case before us. "Our statute" (says ASHE, J., in *State* v. *George*, 93 N. C., 567) "is broad and comprehensive in its terms, and embraces *all means* by which the child may be abducted." The crime is defined in the statute by the term "abduction," which is a term of well-known signification, and means, in law, "the taking and carrying away of a child, a ward, a wife, &c., either by fraud, *persuasion* or open violence." Webster's Dictionary.

It is clear that the consent of the child, obtained by means of persuasion, is no defence, since the result of such persua sion is just as great an evil as if it had been accomplished by other means. Even under the English statutes, where a

"taking" is required, it was said by WIGHTMAN, J. (in *R.* v. *Handley*, 1. F. & F., 648), that "a taking by force is not necessary; it is sufficient if such *moral* force was used as to create a willingness, on the girl's part, to leave her father's home." And in *R.* v. *Makleton*, (1 Dears C. C. R., 159), JERVIS, C. J., enunciated the true spirit of the law when he said that "the statute was framed for the protection of parents." Of course, if there is no force or inducement, and the departure of the child is entirely voluntary, there can be no offence. These principles fully sustain his Honor's charge. But it is insisted that he should have instructed the jury, as requested, that, upon the whole testimony, the defendant was not guilty. This prayer, we suppose, is predicated upon the idea that the declarations of the defendant, as deposed to by W. M. Busbee, were improperly admitted. It appears that the child Eloise and the defendant were found by the mother at the home of Mag Bush, a prostitute, and that the latter had been bound over to Court for the abduction. The mother and the defendant were witnesses for the State, and, during a recess of the Court, were told by Mr. Busbee, a Justice of the Peace, to go to the Solicitor's room, where they were both examined by the latter, preliminary to the sending a bill of indictment against the said Mag Bush. It does not appear that any proceedings had been taken against the defendant at that time, and her declarations at said interview seem to have been voluntary. She could have declined answering any question which tended to incriminate her. Indeed, she could not have been compelled to have made any statement whatever to the Solicitor, as the examination was purely extra-judicial. *State* v. *Williams*, 91 N. C., 599.

We are unable to see any error in the admission of these declarations, and the exceptions based upon it must be overruled.

The testimony was, in our opinion, fully sufficient, in connection with the other circumstances, to warrant a conviction. The defendant stated that she knew that Mag Bush kept a house of prostitution; that she promised to get Eloise to go there, and, at the request of Mag, "she did go to her mother's and get Eloise and take her to Mag's," for the purpose of meeting one Herndon. It was, as we have said, immaterial that the child was willing to go, if her going was "by any means" induced by the defendant, and this question, we think, was properly left to the jury.

It is further objected that the prosecutrix should not have been permitted to testify to the fact that her husband told her to go after Eloise as soon as he discovered that she had gone off with the defendant. We do not see how this in any way prejudiced the defendant's case, as it was evidently introduced for the purpose of showing that the child was taken without the father's consent. It was unnecessary, under our statute, for the State to have shown this (*State* v. *George, supra*), and if it constituted a defence, it was the duty of the defendant to have established it. She offered no testimony tending to show such consent, and the evidence objected to was merely irrelevant, as it only tended to rebut a defence which the defendant did not rely upon. Had it been material, however, we think that the acts of the father, and the accompanying language, upon the discovery of the abduction of his daughter, would have been competent evidence to have shown that her absence was without his consent.

It is also objected that the Court erred in allowing a witness to testify as to the general reputation of Mag Bush's house. Such evidence is held to be admissible in Connecticut, even against a defendant charged with the keeping of a house of ill-fame. *Cadwell* v. *State*, 17 Conn., 467. Such is not, however, the law in this State, but we think it competent when the character of the house is only collaterally

involved, and is attended with evidence of *scienter*, on the part of the defendant, and is only used for the purpose of showing the intent with which an act is done, as, in this case, to show that the defendant's object was to prostitute the child.   Moreover, the defendant could not have been prejudiced by the evidence, as it was shown by her own declaration that Mag Bush was a common prostitute and kept a house of prostitution. Besides, it was unnecessary for the State to have shown the intent of the defendant.   There is nothing in our statute which requires that the abduction should be with a particular intent.   It is only necessary to allege and prove that the child was abducted, or by any means induced "to leave" its custodian.   We think the exception is without merit.

Upon a review of the whole case, we are of opinion that there is

No error.