CLARK, C. J., dissenting.
Criminal action, tried on appeal from the recorder's court.
The warrants on which defendant was tried, as finally amended, charged an unlawful keeping of spirituous liquors for purposes of sale, C. S., art. 4, sec. 3379, and unlawfully receiving more than one quart within fifteen consecutive days from persons other than common carriers, C. S., art. 5, sec. 3385. There were facts in evidence tending to show that in May, 1921, defendant had rented and occupied a place of business in Monroe, N.C. as undertaker, the house having a front room used as an office and a rear room with a partition made by coffin boxes, and in this rear room there were two beds on opposite sides and with a trunk near each, one of the beds being used by defendant when in Monroe and the other used at time place was raided, in February, 1922, by one Walter Moseley, a lodger, occupying as such by agreement with Springs. That defendant had another place of business of the same kind in Lancaster, S.C., where he spent about one-half of his time. That defendant occupied place in Monroe from May, 1921, to October, 1921, alone, and during that time no complaint was made of place. That in October, Walter Moseley having become dissatisfied with his living place, *Page 769 
applied to Springs to have a bed and sleeping room in defendant's place in Monroe, and after that time some complaints were made of disorders at this place. That these complaints were made known to Springs when he had come to Monroe from Lancaster, and he said he would see that it was stopped. That in February, 1922, the officers, with a warrant, searched Springs' place and found in the rear several empty tin cans along one of the walls, which showed odor of whiskey, and in Moseley's trunk at the foot of his bed, on being opened by the officers, there were found eight bottles of whiskey from one-half pint to a quart in size. That Springs made no resistance to the search, but assisted therein, and on finding the whiskey in Moseley's trunk, Springs said that Moseley must have brought it there.
There was evidence further that when both defendant and Moseley were under arrest, Moseley said to Springs: "You needn't deny it. We were both in it fifty-fifty." Which statement Springs denied, Springs himself testifying to this said he didn't hear Moseley make this statement, but understood the sheriff, Fowler, to make it, and that he immediately denied it.
There were several witnesses who testified to the good character of defendant both in Monroe and Lancaster, several business men, including an alderman of the city, testifying that living near and passing Springs' place of business several times a day, they had not noted any disorder, and others that no complaint was made of the place till after Moseley went to stay with him. Over defendant's objection the State was allowed to prove by several witnesses, and same was received as substantive evidence, that Spring's place had a bad reputation for whiskey selling. A witness, by the name of H. S. Christmas, testified that he had a store opposite the Springs place of business, that Springs spends the greater part of his time in South Carolina, his character was good, and that he had never seen any evidence that whiskey was being handled at Springs' place when he was there.
There was verdict of guilty, judgment, defendant excepted and appealed, assigning for error his exceptions duly noted:
1. To the reception of evidence that the reputation of Springs' place was bad for selling liquor.
2. That his Honor, in the charge, submitted this as substantive evidence of defendant's guilt.
With certain recognized exceptions, applicable chiefly in civil causes, and unless expressly made so by statute, hearsay evidence is *Page 770 
not competent in the trial of issues determinative of substantive rights, a position particularly insistent where such issues involve the life or liberties of the litigant. King v. Bynum, 137 N.C. 491; Hopt v. ThePeople of Utah, 110 U.S. 574; Mima Queen v. Hepburn, 11 U.S. (7th Cranch), 290; 1st Elliott on Evidence, secs. 315-319; 1 Greenleaf (16 ed.), sec. 99 a; Lockhart on Evidence, sec. 138; Wharton's Criminal Evidence (9 ed.), sec. 225.
In testimony of this character, so essentially liable to abuse, the witness is giving, not his own evidence under oath, but what he has heard some other person say, and among many other reasons, the evidence is objectionable because the declarant, who is the real witness, has not spoken under the sanction of an oath, and the party affected has not been afforded the opportunity to cross-examine the witness. Speaking to some of the principle objections to such evidence, Professor Greenleaf, supra, says:
"Subject to these qualifications and seeming exceptions (to be later examined), the general rule of law rejects all hearsay reports of transactions, whether verbal or written, given by persons not produced as witnesses. The principle of this rule is that such evidence requires credit to be given to a statement made by a person who is not subjected to the ordinary tests enjoined by the law for ascertaining the correctness and completeness of his testimony; namely, that oral testimony should be delivered in the presence of the court or a magistrate, under the moral and legal sanctions of an oath, and where the moral and intellectual character, the motives and deportment of the witness can be examined, and his capacity and opportunities for observation, and his memory, can be tested by a cross-examination. Such evidence, moreover, as to oral declarations, is very liable to be fallacious, and its true value is, therefore, greatly lessened by the probability that the declaration was imperfectly heard, or was misunderstood, or is not accurately remembered, or has been perverted. It is also to be observed that the persons communicating such evidence are not exposed to the danger of a prosecution for perjury, in which something more than the testimony of one witness is necessary in order to a conviction; for where the declaration or statement is sworn to have been made when no third person was present, or by a person who is since dead, it is hardly possible to punish the witness even if his testimony is an entire fabrication."
And in Mima Queen v. Hepburn, supra, Chief Justice Marshall, speaking to the subject, said: "It was very justly observed by a great judge that `all questions upon the rules of evidence are of vast importance to all orders and degrees of men; our lives, our liberty, and our property are all concerned in the support of these rules, which have been *Page 771 
matured by the wisdom of ages and are now revered from their antiquity and the good sense in which they are founded.'"
"One of these rules is that `hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony, which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible.
"To this rule there are some exceptions which are said to be as old as the rule itself. These are cases of pedigree, of prescription, of custom, and, in some cases, of boundary. There are also matters of general and public history which may be received without that full proof which is necessary for the establishment of a private fact."
The principle referred to and commended by these authorities applies to prosecutions for offenses against the prohibition laws, and in cases like the present, is held to exclude evidence of general reputation of the place where the specific offense is alleged to have been committed, unless, as stated, it has been made competent by some valid statute on the subject.Cobleigh v. McBride et al., 45 Iowa 116; 4th Elliott on Evidence, sec. 3170; 23 Cyc., p. 251.
In this last citation it is said: "The character of the place kept by defendant may be shown by circumstantial evidence tending to show the purpose for which it was used or the kind of business carried on there, but evidence of the reputation of the place, or what people say as to its character or uses, should not be admitted, except where a statute makes such reputation a pertinent fact in the prosecution, or declares it to be competent evidence." And there is, too, direct decision with us that where evidence of the kind in question is incompetent because of being hearsay, the infirmity is not removed by terming it or offering it in corroboration.Holt v. Johnson, 129 N.C. 138.
In the recent case of S. v. McNeill, 182 N.C. 853 and 860, the Court was not properly advertent to the well established and wholesome principle in the laws of evidence excluding hearsay in the trial of causes of this character, and the case in that respect and for that reason must be considered as disapproved.
The case of S. v. Price, 175 N.C. 804 and 806, to which we were also cited, in no way militates against our present ruling, for the charge there was for vagrancy in keeping a bawdy house, and in reference to which our statute, C. S., 4347, expressly makes the general reputation of the house admissible and competent. The only statute claimed to have any possible bearing on the question, C. S., 3383, authorizing a conviction on "circumstantial as well as direct evidence," seems to refer *Page 772 
exclusively to prosecutions under C. S., 3378, which prohibits engaging in the business of selling, etc., or otherwise handling spirituous liquors for the purpose of gain, while defendant in the present case is indicted under sections 3379 and 3385, which constitute distinct and separate offenses, and if this section 3383 could be given a broader significance, we are of opinion that its purpose and effect is merely to relieve the prosecution of the necessity of offering direct evidence of any specific sale, and did not and was not intended to make any change in the kind and character of the circumstances as heretofore considered pertinent in the issue. A proper illustration of the true meaning of the section appears in S. v. Ingram,180 N.C. 672, where the State was allowed to prove that drinking crowds were in the habit of frequenting defendant's place of business. And to the same effect was the question — answer admitted in S. v. Mostella,159 N.C. 459, to wit: "The character of the people that usually frequented defendant's pool room." Question asked and admitted to show drunkenness about the premises. These were both objective facts given in by sworn witnesses, clearly relevant as tending to show the offense charged, and could in no sense be considered as hearsay.
We have had occasion before during the present term, in S. v. Millsante, 694, to advert to the great importance of adhering to rules and precedents established and recognized as necessary to insure a fair and impartial trial of men accused of crime both in the reception of evidence and otherwise, and we must hold that in permitting over defendant's objection three or four witnesses to testify that the reputation of defendant's place was bad for selling liquor, and in submitting same in the charge as an independent circumstances tending to show guilt, defendant has, in effect, been erroneously convicted by means of hearsay evidence, and is entitled to a new trial of the issue.
New trial.