STATE OF NORTH CAROLINA v. EDELL WILLIS

No. 163PA83

(Filed 27 September 1983)

1. **Criminal Law § 80— nicknames on pieces of paper—identification of persons by officer**

   In a prosecution for felonious possession of heroin, the trial court properly permitted an officer to testify that he recognized certain initials, abbreviations and names appearing on pieces of paper found in defendant's wallet as being the nicknames or "street names" of specified persons whom he had investigated for various narcotics violations since the officer was merely testifying concerning his personal knowledge.

2. **Criminal Law § 34.6— evidence of other narcotics violations—admissibility to show intent and guilty knowledge**

   In a prosecution for felonious possession of heroin, pieces of paper found in defendant's wallet containing the names of persons with numbers written beside the names, testimony by officers that the names on the papers were the "street names" for various persons who had been investigated or arrested for narcotics violations, and large amounts of cash seized from defendant were admissible to show the intent of defendant in possessing the heroin and his guilty knowledge of the type of substance he possessed, notwithstanding such evidence also tended to show other narcotics violations by defendant.

ON defendant's petition for discretionary review, pursuant to G.S. 7A-31, of the decision of the Court of Appeals (*Judge Braswell*, with *Chief Judge Vaughn* and *Judge Wells* concurring) reported at 61 N.C. App. 23, 300 S.E. 2d 420 (1983), finding no error in the judgment of conviction entered by *Battle, J.*, at the 22 February 1982 Criminal Session of Superior Court, WAKE County.

Defendant was charged in an indictment, proper in form, with feloniously possessing four to fourteen grams of the controlled substance heroin in violation of G.S. 90-95(h)(4). The trial court entered judgment and sentenced the defendant to not less than eight nor more than ten years, and a fine of $50,000.00.

The facts disclose that the defendant was searched subsequent to his arrest and in searching defendant's wallet, the officers found four pieces of paper which contained certain writings. These papers were seized and offered into evidence before the jury at the trial. In connection therewith, Officer O'Shields was permitted to testify over objection that he recognized the abbreviations and initials appearing on the pieces of paper as being

the names or aliases of persons who had either been arrested for, or convicted of, various violations of the Controlled Substances Act.

The State's evidence further tended to show that two officers on patrol saw the defendant, who was riding on the passenger side of the front seat of a Cadillac, open the door and throw something under the car before it sped away. One of the officers, Sergeant Peoples, testified that after apprehending defendant he returned to the scene to retrieve the package thrown from the car and found it in the street about four feet from the curb with nothing else near it. A laboratory analysis of the contents of the package revealed it to be 13.4 grams of white powder containing thirty percent pure heroin.

Defendant did not testify in his own behalf but offered the testimony of one witness who said she was in a position to see what occurred, and did not see a car door open and a hand throw something from the car.

A complete statement of the facts is set forth in the Court of Appeals' opinion, reported at 61 N.C. App. 23, 300 S.E. 2d 420 (1983).

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*J. Frank Huskins, Hafer, Purrington & Hall, by Kyle S. Hall; Loflin & Loflin, by Thomas F. Loflin, III, for the defendant.*

COPELAND, Justice.

The facts disclose that one of the pieces of paper taken from the defendant had the following on it:

MISS D — 500

Young J.J. — 900-500

Johnnie — 750

B. Ray 900-300-550

Peach — 675

Drake 675-60

S. Man — 225

Another had:

Sam man — 725

Greensboro — 450

Peach

S. Man 450

Another had:

Peach 8-3

Vern 3

S. 2

Sam man 725

Ray 900-1000

Good

In addition there was a note with names and telephone numbers. This note included the following:

Sam Perry H. 832-0924

       S. 833-9146

Mrs. D. 832-9146

On *voir dire*, concerning the admissibility of these documents, Officer O'Shields testified that the names with numbers beside them are the amounts of packaged heroin or the amounts the named people owed Edell Willis for their heroin. The officer also testified that from his own experience in narcotics investigation including talking to informants and the people themselves, he recognized most of the names written on the papers as being the "street names" for certain people he had investigated. Specifically, O'Shields stated:

> With regard to the names here and my interpretation that they mean particular people comes from informants and with me talking with these people themselves telling me their names, their street names. I have not taken these items to these people on here and asked them if this is heroin and if

they got it from Edell Willis. I assume from my information on the street that Miss D is Dee Jones. I have called that telephone number and talked with Miss D and Dee Jones at that address when she used to live on Angier Avenue. . . . Basically I look at the paper writings in front of me and pretty much based on the information that I have gathered over the years as a narcotics officer, place an interpretation on these items as to who they are and what it means.

Thereupon, the judge ordered that the officers could testify before the jury as to the names with which they were personally familiar and explain how they knew those persons, including whether those persons had been arrested for or convicted of possession of heroin.

It was then that Officer O'Shields testified before the jury that he knew various of the names on the paper to mean certain named individuals. He also testified concerning their drug arrests and convictions.

The defendant offered evidence through Janet Graves that she observed the scene and that Willis did not open the door or throw anything under the Cadillac, and that defendant Willis said nothing. This witness said that she recognized the officers' automobile as a police vehicle. She also said she saw some people walk down the street after the Cadillac and the police car left the area. Sergeant Peoples testified that he saw no one on the street when he and Officer O'Shields first stopped nor when he came back approximately five minutes later to retrieve the package of heroin.

[1] Defendant argues and contends that the trial court was in error in allowing Officer O'Shields to testify concerning the meaning of initials, names and telephone numbers on a paper seized from the defendant's wallet.

In this connection the defendant argues that the Court of Appeals erred in finding that Officer O'Shields was an expert witness as to his testimony about the pieces of paper found on the defendant and that Officer O'Shields should not have been allowed to identify the names of the people whose "street names" were listed on the papers taken from Willis' wallet. The State claims that the Court of Appeals correctly upheld Officer O'Shields' testimony concerning people he knew personally.

The defendant argues that the Court of Appeals improperly held, "that it was permissible for O'Shields to render his opinion about the meaning of the letters, words, numbers and cryptic abbreviations that appeared on the paper." We conclude that Officer O'Shields did not testify as an expert witness, though the State contended that O'Shields clearly is an expert in drug and especially heroin investigation and was properly allowed to testify before the jury as he did on *voir dire* concerning the meaning of the figures on the papers. O'Shields testified concerning his personal knowledge. He knew these people by their nicknames on the paper. He had further verified his knowledge by the telephone numbers listed next to several of the names. Also, he had arrested most of the people he identified.

Officer O'Shields simply identified the persons he personally knew from their nicknames on the papers. The officer's knowledge and expertise as a drug investigator was certainly relevant to show *how* he knew these people. He was not qualified as an expert in nicknames. He testified from his own first-hand knowledge. Counsel for the defendant could have tested his knowledge at trial by cross examination, if there was any doubt about the identifications. It is significant that there was no cross examination.

Judge Battle properly allowed Officer O'Shields to identify the names he knew. On this basis, this assignment of error is overruled.

Next it is argued that the trial court incorrectly permitted the State to show the defendant's association with others in the trafficking of controlled substances where such association showed guilty knowledge of the type of substance the defendant possessed.

[2] Defendant argues that the Court of Appeals erred in upholding the trial court's permitting into evidence the paper writings, large amounts of cash, and the officers' testimony concerning their knowledge of the people listed on the papers into evidence. The defendant claims that this violated the rule that other offenses are inadmissible on the issue of guilt if their only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged. 1

Stansbury, N.C. Evidence § 91 (Brandis rev. 1973); *State v. Mc-Clain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

The rule in *McClain* establishes that evidence of other crimes is inadmissible if its *only* relevance is to show the character of the accused. The exceptions to this rule of inadmissibility, also set out in *McClain*, are as well established as the rule itself. Two of these exceptions read as follows:

> 2. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused.
> . . .
>
> 3. Where guilty knowledge is an essential element of the crime charged evidence may be offered of such acts or declarations of the accused as tend to establish the requisite guilty knowledge, even though the evidence reveals the commission of another offense by the accused. . . . 240 N.C. at 175.

The evidence admitted showed that Edell Willis had engaged in other violations of the Controlled Substances Act. This evidence was relevant to show the intent of the defendant in possessing the substance and his guilty knowledge of the type of substance he possessed. *State v. Humphrey*, 283 N.C. 570, 196 S.E. 2d 516, *cert. denied*, 414 U.S. 1042 (1973); *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972); *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969); *State v. Russell*, 56 N.C. App. 374, 289 S.E. 2d 42 (1982).

In order to show possession of an illegal substance, the State must show the defendant had both the power and intent to control the substance's disposition or use. *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972). So, in the matter that we have before us, the pieces of paper and the money seized were certainly admissible to show Willis' ability and intent to control the heroin's disposition as well as his knowledge of the contents of the substance.

The Court of Appeals, in its opinion, cited the case of *State v. Richardson*, 36 N.C. App. 373, 243 S.E. 2d 918 (1978). In that case it is stated as follows:

> In drug cases, evidence of other drug violations is relevant and admissible if it tends to show . . . disposition to deal in illicit drugs. . . . 36 N.C. App. at 375, 243 S.E. 2d at 919.

The State in its brief concedes that the above quotation from *Richardson* appears to be in direct contradiction with *McClain*. In fact, the Court of Appeals in *State v. Bean*, 55 N.C. App. 247, 284 S.E. 2d 760 (1981) declared that the language in *Richardson* is dictum and disapproved it. We likewise disapprove of the above-quoted language from *Richardson*. The admission of evidence in the matter now before the Court of other drug transactions was proper under the holding of *McClain* to show intent and guilty knowledge. The fact that the Court of Appeals cited *Richardson* as its authority for the admission of the evidence in this present case in no way implies that the only value of the evidence was to show Willis' predisposition to deal in drugs. The Court of Appeals specifically identified the purpose of showing guilty knowledge when approving the trial court's ruling.

The defendant argues that this evidence of other drug transactions and the prosecution's arguments concerning the evidence constituted evidence of bad character. Nevertheless, such evidence is appropriate despite what it might show about the defendant's character. *McClain*, 240 N.C. at 175.

The opinion of the Court of Appeals is modified and affirmed.

Modified and affirmed.