STATE OF NORTH CAROLINA v. SUPORA WELDON

No. 12PA84

(Filed 5 September 1985)

1. **Criminal Law § 34.7; Narcotics § 3.1— heroin found in defendant's house on other occasions—admissibility to show guilty knowledge**

In a prosecution for trafficking in heroin, evidence that police found heroin in or near defendant's house on two occasions other than the one for which defendant was on trial was properly admitted for the purpose of showing defendant's guilty knowledge even though it revealed defendant's commission of other offenses.

2. **Criminal Law § 34.1; Narcotics § 3.1— other drug offenses—disposition to deal in drugs—disapproval of language in Court of Appeals cases**

Language in *State v. Richardson*, 36 N.C. App. 373, 243 S.E. 2d 918, quoted by the Court of Appeals in this case, to the effect that evidence of other drug offenses is admissible to show "disposition to deal in illicit drugs" is disapproved.

3. **Narcotics § 3.1— reputation of house for narcotics—inadmissible hearsay—harmless error**

In a prosecution for trafficking in heroin, testimony by police officers that defendant's house had a reputation as a place where illegal drugs were bought and sold was inadmissible hearsay, but the admission of such testimony was harmless error where the State offered abundant evidence of defendant's guilt and a different result would not have likely ensued absent such testimony, and where defendant solicited the same evidence on cross-examination. G.S. 15A-1443.

Justice BILLINGS did not participate in the consideration or decision of this case.

ON discretionary review, pursuant to N.C.G.S. § 7A-31, of a decision of the Court of Appeals, 65 N.C. App. 376, 309 S.E. 2d 263 (1983), finding no error in defendant's conviction of trafficking in heroin and sentence of fourteen (14) years' imprisonment, entered at the 3 August 1982 Criminal Session of WAKE County Superior Court, *Judge Braswell* presiding.

*Rufus L. Edmisten, Attorney General, by George W. Lennon, Assistant Attorney General, for the state.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner and Gordon Widenhouse, Assistant Appellate Defenders, for defendant appellant.*

EXUM, Justice.

This case presents two dispositive issues: (1) Whether the trial court erred in admitting evidence that on two occasions other than that for which defendant was convicted, police found heroin in or near defendant's house; and (2) whether the trial court erred in admitting the testimony of police officers that defendant's house had a reputation as a place where illegal drugs were bought and sold? We answer the first question no and the second yes. However, finding this latter error to be harmless, we affirm the decision of the Court of Appeals.

I.

Defendant was arrested and charged with trafficking in heroin on 8 February 1982 after police, armed with a search warrant, discovered thirty (30) bindles (6.1 grams) of heroin hidden beneath a pile of clothing in defendant's living room. Police obtained the search warrant after an informant advised them that he observed a sale of heroin at defendant's house earlier in the day. In addition to the heroin, police found $449 in cash on defendant's person.

Defendant shared the house, which was leased solely to her, with a boyfriend, four adult children, a teenaged daughter and a nephew. Friends of defendant's adult children habitually congregated to drink alcoholic beverages beside a large oil drum which stood in front of defendant's house and in which a fire was maintained in cold weather.

At trial, police officers were allowed to testify over objection that defendant's house had a reputation as a place where illegal drugs could be bought or sold. Police also testified that on two other occasions, a search of defendant's house led to the discovery of heroin. On 9 December 1981, police discovered a number of bags of heroin beneath a sofa on which defendant was seated with two other people. On a table in front of defendant police on this occasion also found two bags of marijuana, a needle and syringe, and $648. On 30 May 1982, police discovered heroin under a garbage container five feet from the rear door of defendant's house and found approximately $200 on defendant's person.

Defendant testified in her defense. She denied knowing to whom the heroin belonged or how it got into her house. She also

testified that on 8 February she had $449 in cash because she had recently received her government fuel assistance check for almost $200, a Social Security check for her grandson for $239; and her daughter had given her $25 to pay off a parking ticket.

## II.

[1]  In her first assignment of error, defendant contends the trial court erred in allowing police officers to testify about their discoveries at defendant's premises on two occasions other than the one for which defendant was on trial. Defendant contends this testimony amounted to evidence that defendant committed other distinct crimes and was therefore inadmissible.

To convict defendant of trafficking in heroin, a violation of N.C.G.S. § 90-95(h)(4)a, the state was required to prove that defendant *knowingly* possessed the 6.1 grams of heroin found in her house on 8 February 1982. "Felonious possession of a controlled substance has two essential elements. The substance must be possessed, and the substance must be knowingly possessed." *State v. Rogers*, 32 N.C. App. 274, 278, 231 S.E. 2d 919, 922 (1977). "An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material . . . when he has both the power and intent to control its disposition or use." *State v. Harvey*, 281 N.C. 1, 12, 187 S.E. 2d 706, 714 (1972). "The requirements of power and intent necessarily imply that a defendant must be aware of the presence of an illegal drug if he is to be convicted of possessing it." *State v. Davis*, 20 N.C. App. 191, 192, 201 S.E. 2d 61, 62 (1973), *disc. rev. denied*, 284 N.C. 618, 202 S.E. 2d 274 (1974). "When such materials are found on the premises under the control of the accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Harvey*, 281 N.C. at 12, 187 S.E. 2d at 714.

Defendant here did not deny that the heroin was found on her premises on all three occasions. She does not contest the sufficiency of the evidence. Her entire defense was directed toward persuading the jury that she had no knowledge of the presence of the heroin and, in the words of her brief, "would not knowingly allow anyone to use drugs in her house."

The Court of Appeals, in upholding the trial court's admission of the contested evidence, said: "The evidence complained of

was expressly offered by the state to show defendant's 'guilty knowledge' of the presence and character of the drugs found during the February 1982 search." 65 N.C. App. at 378, 309 S.E. 2d at 265. The Court of Appeals concluded that evidence of other discoveries of heroin at defendant's house was relevant to the issue of defendant's guilty knowledge.

The well-established rule in North Carolina is that evidence of other crimes is generally inadmissible on the issue of guilt if its only relevance is to show defendant's bad character or disposition to commit an offense similar to the one charged. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). *McClain* also teaches, however, as defendant acknowledges, that the general rule prohibiting admission of "other crimes" evidence does have exceptions. *See State v. McClain*, 240 N.C. at 174-76, 81 S.E. 2d at 366-68. Two of those exceptions, held applicable to the present case by the Court of Appeals, were discussed by this Court in *State v. Willis*, 309 N.C. 451, 456, 306 S.E. 2d 779, 782-83 (1983):

> The rule in *McClain* establishes that evidence of other crimes is inadmissible if its *only* relevance is to show the character of the accused. The exceptions to this rule of inadmissibility, also set out in *McClain*, are as well established as the rule itself. Two of these exceptions read as follows:
>
> > 2. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused. . . .
> >
> > 3. Where guilty knowledge is an essential element of the crime charged evidence may be offered of such acts or declarations of the accused as tend to establish the requisite guilty knowledge, even though the evidence reveals the commission of another offense by the accused. . . . 240 N.C. at 175.

Defendant contends that notwithstanding these exceptions, admission of the disputed evidence in this case was error because there is no *direct* evidence linking defendant to commission of the other crimes offered by the state to show guilty knowledge.

Where "other crimes" evidence does not sufficiently connect defendant to the other crimes, it is not admissible for any purpose, defendant argues.

Defendant relies heavily upon *State v. Breedin*, 306 N.C. 533, 293 S.E. 2d 788 (1982). In *Breedin*, defendant was being tried for the armed robbery of Horne's Grocery and Package Store on Person Street in Fayetteville. The evidence tended to show that defendant and an accomplice entered the store, wearing ski-type masks and, at gunpoint, took money from the cash register and personal items from two employees and two customers. Three of the victims identified defendant as one of the perpetrators. As further evidence of defendant's identity, the state sought to offer evidence which it contended tended to show that defendant and his accomplice had within fourteen hours of the grocery store robbery also robbed a Wiener King located approximately 100 yards from the grocery store. The state contended that the two robberies were so similar that the jury could infer both offenses were committed by the same persons; therefore evidence that defendant had committed the Wiener King robbery tended to prove that he also committed the grocery store robbery. Further the state argued that the evidence tended to show that both robberies were the product of a common scheme or plan; therefore evidence that defendant committed one tended to show that he also committed the other.

The witness to the Wiener King robbery, Thomas Odom, was not able positively to identify defendant as one of the two robbers of that establishment. He testified to certain circumstances which tended to indicate that defendant might have been one of the robbers but as this Court noted there was "no direct evidence that defendant was one of the two men who robbed the Wiener King." 306 N.C. at 536, 293 S.E. 2d at 791. This Court concluded, therefore, that evidence of the "other crime" was not admissible on the issue of identification. The Court said, "Had the defendant been identified as one of the participants in the Wiener King robbery, the evidence of that crime would have been admissible here on the issue of identification . . . but the failure to identify defendant as a participant in the Wiener King robbery . . . makes the evidence inadmissible. . . ." 306 N.C. at 537, 293 S.E. 2d at 791.

Defendant argues the evidence offered by the state in this case to show her guilty knowledge suffers from the same fatal

flaw as that offered in *Breedin* to show identity. She says there is no direct evidence that she knowingly possessed the contraband on the other occasions and the evidence relating to these other occasions is at best circumstantial on the issue of her guilt of these other possessions, like it was in *Breedin.*

Defendant fails to appreciate the difference between the theories upon which admissibility of the evidence rested in *Breedin* and the theory upon which it rests in the instant case. In *Breedin* one theory of admissibility was that defendant allegedly had *committed* two crimes under circumstances so similar that evidence of defendant's commission of one tended to show that he also committed the other. The other theory was that the evidence tended to show that both *crimes* arose out of a common plan or scheme; therefore evidence that defendant *committed* the other crime tended to prove that he committed the crime charged. In *Breedin,* therefore, admissibility under both theories rested on proving that defendant did, in fact, commit the other crimes.

In the instant case admissibility of evidence of the discovery of other controlled substances on other occasions on defendant's premises rests on an entirely different theory. At issue here is not defendant's identity. At issue is her guilty knowledge. Guilty knowledge, being a state of mind, is almost never provable by direct evidence. Its existence almost always must be proved, if at all, by circumstantial evidence. Thus "[w]here guilty knowledge is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite guilty knowledge, *even though* the evidence reveals the commission of another offense by the accused." *State v. McClain,* 240 N.C. at 175, 81 S.E. 2d at 367 (emphasis added). Any fact or facts tending to prove defendant's guilty knowledge may be offered against defendant when guilty knowledge is, as here, an issue in the case. Such facts may or may not show that defendant is guilty of another crime. Obviously such a showing is not prerequisite to admissibility. The only prerequisite to admissibility is that the evidence be probative on the question of defendant's guilty knowledge.

The challenged evidence is probative of defendant's guilty knowledge in connection with the crime for which she was being tried. The evidence was that on two separate occasions, one oc-

State v. Weldon

curring before defendant's arrest on the present charge and one after, police discovered heroin in or near defendant's house. On one occasion the heroin was in close proximity to defendant, as were marijuana and drug paraphernalia. On both occasions defendant had relatively large amounts of cash on her person as she did on the occasion for which she was being tried. The likelihood of defendant's knowledge of the drugs at her premises increases as the instances of discovery of drugs there accumulate. Her excuse for having a large sum of money on the occasion for which she was tried also loses weight before the trier of fact in the face of evidence that on two other occasions both drugs on defendant's premises and large amounts of cash on her person coexisted. As instances of the coexistence of drugs at her premises and cash on her person accumulate, the more likely it becomes that defendant knowingly possessed the drugs. The challenged evidence tends strongly to negate defendant's claim that she was unaware of the presence at her premises of that heroin which is the basis for the trafficking charge. The evidence is strongly probative on the major contested issue in the case, defendant's guilty knowledge.

[2]   We take this opportunity, however, to correct a misstatement of the law occurring in the Court of Appeals' opinion. In its discussion of the exception to the prohibition of "other crimes" evidence stated in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364, the Court of Appeals said: "On drug cases, however, 'evidence of other drug violations is relevant and admissible if it tends to show plan or scheme, *disposition to deal in illicit drugs*, knowledge of the presence and character of the drug, or presence at and possession of the premises where the drugs are found.' *State v. Richardson*, 36 N.C. App. 373, 375, 243 S.E. 2d 918, 919 (1973)." (Emphasis added.) In *State v. Willis*, 309 N.C. 451, 306 S.E. 2d 779 (1983), this Court expressly disapproved that portion of the *Richardson* language quoted above allowing admission of evidence of other drug offenses to show "disposition to deal in illicit drugs." We note, as we did in *Willis*, that the Court of Appeals itself disapproved this language and declared it dictum in *State v. Bean*, 55 N.C. App. 247, 284 S.E. 2d 760 (1981). We now reiterate our disapproval of this language.

The validity of the Court of Appeals' decision is not affected by inclusion of this language since the court correctly identified a permissible purpose for which the disputed evidence in this case was admitted, *i.e.,* to show defendant's guilty knowledge.

## III.

**[3]** Defendant next contends that the trial court erred in admitting evidence that defendant's house had a reputation as a place where heroin and other illegal drugs could be bought or sold. We agree. The applicable general rule is that in a criminal prosecution evidence of the reputation of a place or neighborhood is ordinarily inadmissible hearsay. *State v. Springs,* 184 N.C. 768, 114 S.E. 851 (1922). The Court of Appeals held, however, that "evidence concerning the reputation of a place or neighborhood is admissible where it goes to show the intent of the person charged," 65 N.C. App. at 379, 309 S.E. 2d at 265, citing *State v. Lee,* 51 N.C. App. 344, 276 S.E. 2d 501 (1981).

In *Lee,* defendant was charged with felonious possession of a controlled substance. The evidence tended to show that defendant presented a forged prescription to a pharmacist for Talwin, a controlled substance. Defendant testified at trial that a woman he knew as Katie Cummings gave him the prescription and asked him to get it filled. The Katie Cummings who lived at the address shown on the prescription did not know defendant and had never given him a prescription in her name. Defendant denied knowing the prescription was forged or that Talwin was a controlled substance. The state was allowed to introduce evidence that the area where defendant claimed he received the prescription from Katie Cummings was known as a "drug-use" area. On appeal, the Court of Appeals noted the general rule prohibiting the admission of such evidence. It held, however, that the evidence was admissible to refute defendant's claim of ignorance regarding the forged prescription and the nature of the drug he sought to acquire. The Court of Appeals supported this result by citing, without discussion, *State v. Chisenhall,* 106 N.C. 676, 11 S.E. 518 (1890).

An examination of *Chisenhall* leads us to conclude that the Court of Appeals' reliance upon it in *Lee,* and therefore its

reliance upon *Lee* in the present case, was misplaced. In *Chisenhall*, defendant was charged with abduction of defendant's 13-year-old sister in violation of what is now codified as N.C.G.S. § 14-41. The statute makes it a crime for anyone to "induce a child under the age of fourteen years . . . to leave" a person with whom or school where the child "resides." Although the statute does not require "that the abduction . . . be with a particular intent . . .," *id.* at 682, 11 S.E. at 520, the state's theory was that Chisenhall's motive in abducting her sister was to take her to a house of prostitution. The state offered in evidence Chisenhall's out-of-court declaration that: one Mag Bush had requested Chisenhall to bring her sister to Mag Bush's house; Chisenhall did so in response to the request; and Chisenhall "knew the character of Mag's house and it was a 'whore-house.'" The state also offered evidence from another witness that Mag Bush's house had a reputation as a house of prostitution.

The Court in *Chisenhall* first concluded that there was no error in offering defendant's out-of-court declaration against her. In finding no error in the admission of the testimony as to the reputation of Mag Bush's house, the Court said:

> It is also objected that the court erred in allowing a witness to testify as to the general reputation of Mag Bush's house. Such evidence is held to be admissible in Connecticut, even against a defendant charged with the keeping of a house of ill-fame. *Cadwell v. State*, 17 Conn., 467. Such is not, however, the law in this State, but we think it competent when the character of the house is only collaterally involved, and is attended with evidence of *scienter*, on the part of the defendant, and is only used for the purpose of showing the intent with which an act is done, as, in this case, to show that the defendant's object was to prostitute the child. Moreover, the defendant could not have been prejudiced by the evidence, as it was shown by her own declaration that Mag Bush was a common prostitute and kept a house of prostitution. Besides, it was unnecessary for the State to have shown the intent of the defendant. There is nothing in our statute which requires that the abduction should be with a particular intent. It is only necessary to allege and prove that the child was abducted, or by any means induced "to leave" its custodian. We think the exception is without merit.

*Id.* at 681-82, 11 S.E. at 520.

*Chisenhall* does not hold that the reputation of a place is admissible to show the intent or guilty knowledge of one charged with illicit possession of contraband in that place. *Chisenhall* expressly recognized that the law in North Carolina did not permit evidence of a place's reputation to be admitted against a defendant charged with maintaining the place as a house of prostitution. *Chisenhall* held only that in light of competent evidence that defendant said she knew the place where she took her sister to be a brothel, it was permissible on the question of defendant's motive, which was not an element of the crime, to show the place did have such a reputation. The great bulk of the quoted passage from *Chisenhall* demonstrates why the reputation evidence was not prejudicial to defendant in that case. In any event, insofar as *Chisenhall* holds that such reputation evidence is competent, the holding should be limited to the particular theory which the Court enunciated in light of the peculiar facts of the case.

The general rule in this state may be found in *State v. Tessnear*, 265 N.C. 319, 144 S.E. 2d 43 (1965), a case indistinguishable in principle from the instant case. In *Tessnear*, defendant was charged with possession of non-taxpaid liquor after officers discovered numerous containers of liquor in defendant's home. The defense was that the liquor belonged to someone else who, unbeknownst to defendant, had placed it in defendant's home moments before the officers seized it. Police had observed the house, noting large amounts of traffic to and from the residence, and had arrested several intoxicated persons as they left defendant's house. At trial, several of the state's witnesses testified that defendant's house had the reputation of having whiskey for sale. This Court held the admission of that evidence error and granted defendant a new trial. It said, "North Carolina is included among those jurisdictions which hold 'that evidence of the general reputation of defendant's premises is inadmissible in prosecutions for liquor law violations involving a charge of unlawful sale or possession of intoxicants at particular premises.'" *Id.* at 322, 144 S.E. 2d at 46. The same rule is articulated in a number of our cases involving violations of the state's liquor laws. *See, State v. Turpin*, 203 N.C. 11, 164 S.E. 2d 926 (1932); *State v. Springs*, 184 N.C. 768, 114 S.E. 851 (1922); *State v. McNeill*, 182 N.C. 855, 109 S.E. 84 (1921).

We perceive no factual distinctions between violations of the state's liquor laws and our drug laws which would justify application of a different rule. We therefore hold that the trial court erred in admitting at defendant's trial for trafficking in heroin evidence that defendant's house had a reputation as a place where illegal drugs could be bought and sold.

We conclude, however, that the error is not such as to warrant a new trial. Trial errors not amounting to constitutional violations do not warrant awarding a new trial unless "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." N.C.G.S. § 15A-1443. Erroneous admission of evidence may be harmless where there is an abundance of other competent evidence to support the state's primary contentions, *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969); *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965), or where there is overwhelming evidence of defendant's guilt. *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972); *State v. Cox*, 281 N.C. 275, 188 S.E. 2d 356 (1972). Moreover, the admission of testimony over objection may be harmless where defendant elicits similar testimony on cross-examination. *State v. Fletcher*, 279 N.C. 85, 181 S.E. 2d 405 (1971); *State v. Brown*, 272 N.C. 512, 158 S.E. 2d 354 (1968).

In the instant case, the state offered abundant evidence of defendant's guilt. The house in which 30 bindles of heroin were discovered was leased solely to defendant. Defendant testified that she had control of the house. Police informants observed a heroin sale take place at defendant's home on the day of her arrest. Defendant admitted that her house was a place where many friends of her adult children congregated and that heroin had been discovered by police at the house on two other occasions. On one of these occasions the heroin was beneath a sofa where defendant sat and in front of which on a table were marijuana, drug paraphernalia and a large amount of cash. Although defendant testified that she had no regular employment, she had large sums of money either on her person or in close proximity to her both on the night of her arrest and the two other occasions on which police discovered heroin at her home. We do not believe it can be said that, absent the admission of the disputed reputation evidence, a different result would have likely ensued. *State v. Jones*, 278 N.C. 259, 179 S.E. 2d 433 (1971).

Moreover, on cross-examination of one of the state's witnesses who had testified about the reputation of defendant's house, defendant asked, "You only know—you do not know the reputation of the house when she (defendant) is there, do you?" The witness's response was, "The information that I received would indicate that her reputation, as well as the reputation of the house, is related to the sale and use of illegal drugs." The effect of this question was that defense counsel put before the jury the very reputation evidence which he contends was prejudicially admitted when offered by the state. Introduction of this evidence by the state was, therefore, made harmless by the defendant's solicitation of the same evidence on cross-examination.

The decision of the Court of Appeals is

Affirmed.

Justice BILLINGS did not participate in the consideration or decision of this case.