STATE OF NORTH CAROLINA v. HENRY LIGON, JR.

No. 451A91

(Filed 4 September 1992)

**1. Evidence and Witnesses § 967 (NCI4th) — murder — sales ticket for pistol ammunition — business record — admissible**

The trial court did not err in a noncapital murder prosecution by allowing into evidence a sales ticket and testimony concerning a purchase of pistol ammunition where the use of the sales ticket fits neatly within the parameters of N.C.G.S. § 8C-1, Rule 803(6) in that the ticket was filled out by the witness at the time defendant's driver's license was presented to him at the sale; the ticket was kept in the course of a regularly conducted business activity; it was the regular practice of the business to keep such a record; and the witness was qualified to give the testimony. The witness's failure to identify defendant as the man who presented the driver's license goes to the weight and not the admissibility of the evidence.

**Am Jur 2d, Evidence §§ 478, 937-939, 945, 947.**

**2. Evidence and Witnesses § 357 (NCI4th) — murder — evidence of defendant's drug dealings — admissible to show motive**

The trial court did not err in a noncapital murder prosecution by allowing testimony about defendant's drug dealings

STATE v. LIGON

[332 N.C. 224 (1992)]

where the disputed evidence was relevant to show defendant's motive for murder. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 325, 363.**

3. **Evidence and Witnesses § 186 (NCI4th) — murder — reputation of neighborhood — admissible**

The trial court did not err in a noncapital murder prosecution by allowing testimony that the neighborhood where the shooting occurred has a reputation as an area where drugs are frequently bought and sold because defendant was not charged with any drug offense and the testimony was offered to explain why the victim went there and why defendant was there.

**Am Jur 2d, Evidence § 249.**

4. **Evidence and Witnesses § 729 (NCI4th) — murder — law enforcement documents — defendant identified as suspect — no prejudice**

There was no prejudice in a murder prosecution in allowing the jury to see documents from the Asheville Police Department, the S.B.I., and the F.B.I. which identified defendant as the suspect in the murder where defendant did not contend that the documents were otherwise inadmissible, only that the references to defendant as the suspect should have been deleted. Assuming error, there was no prejudice because it is obvious that any criminal defendant standing trial is a suspect in the case.

**Am Jur 2d, Appeal and Error §§ 797, 801.**

5. **Evidence and Witnesses § 3172 (NCI4th) — out of court statement — admitted for corroborative purposes — new information**

The trial court did not err in a murder prosecution by allowing a detective to read to the jury a statement by a witness to police for corroborative purposes only. The out-of-court statement was properly admitted to corroborate the in-court testimony, and the only new information in the statement consisted of minor details which strengthened and added credibility to the in-court testimony.

**Am Jur 2d, Witnesses § 1013.**

STATE v. LIGON

[332 N.C. 224 (1992)]

6. **Evidence and Witnesses § 3081 (NCI4th)— State's witness— prior statements—introduced to impeach—no error—additional material—no prejudice**

The trial court did not err in a murder prosecution by allowing into evidence three out-of-court statements for purposes of corroboration and impeachment where a State's witness testified that he had been present at the scene and had heard shots but had not seen anyone with a gun and the State introduced a transcript of the witness's testimony from a prior sentencing hearing for an unrelated crime to which the witness had pled guilty and two written statements the witness had given police. Defendant conceded at oral argument that it was proper for the State to impeach the witness with prior inconsistent statements concerning what he had seen the night of the shooting and, while some of the other statements, such as the suggestion that defendant was the person who had gotten him hooked on drugs, should not have been read to the jury, defendant cannot demonstrate prejudice given the evidence against him.

Am Jur 2d, Witnesses §§ 1013 et seq.; Appeal and Error §§ 797, 801.

7. **Homicide § 566 (NCI4th)— murder—instruction on voluntary manslaughter as lesser included offense—imperfect self defense—denied**

The trial court did not err in a murder prosecution by not instructing the jury on the lesser included offense of voluntary manslaughter based on imperfect self defense where, even assuming defendant's version of the evidence is accurate, there was absolutely no evidence that defendant believed it necessary to kill the victim in order to save himself from death or great bodily harm and, even if he had such a belief, it certainly would not have been reasonable, given that the victim's car was speeding away when the shots were fired.

Am Jur 2d, Homicide §§ 498, 510, 511, 525.

8. **Homicide § 562 (NCI4th)— murder—instruction on voluntary manslaughter as lesser included offense—provocation—denied**

The trial court did not err in a murder prosecution by not instructing the jury on the lesser included offense of voluntary manslaughter based on provocation where, assuming

defendant's version of the evidence was accurate, there was absolutely no evidence that defendant shot the victim in the heat of passion upon adequate provocation. While defendant may have been "provoked" that the victim stole his cocaine, that is hardly what the law regards as adequate provocation.

**Am Jur 2d, Homicide §§ 479, 485.**

9. **Homicide § 609 (NCI4th) — murder — instruction on self defense refused — no evidence of reasonable apprehension of death or great bodily harm**

The trial court did not err in a murder prosecution by refusing to instruct the jury on perfect self defense where the undisputed evidence at trial was that the back windshield of the victim's car was blown out by gunshots and that two bullets entered his back as he drove away in his car.

**Am Jur 2d, Homicide §§ 480, 485, 519.**

10. **Criminal Law § 40 (NCI4th) — murder — instruction on presence — denied — no error**

The trial court did not err in a murder prosecution by denying defendant's request for an instruction on mere presence where witnesses either saw defendant with a gun in his hand after hearing gunshots or did not see him at all and there was thus no evidence that defendant was "merely present" at the scene.

**Am Jur 2d, Homicide § 485.**

11. **Criminal Law § 466 (NCI4th) — murder — closing argument — reference to defense counsel raising smoke screens — no prejudice**

The prosecutor's closing arguments in a murder prosecution were not so grossly improper as to require intervention *ex mero motu* where the prosecutor mentioned smoke or smoke screen four times during his closing argument to obscure the fact that defendant was guilty of murder.

**Am Jur 2d, Appeal and Error § 624; Trial §§ 554 et seq.**

12. **Appeal and Error § 502 (NCI4th) — murder — cumulative effect of errors — not prejudicial**

The cumulative effect of "numerous" errors in defendant's murder trial did not require a new trial where the Supreme

STATE v. LIGON ·

[332 N.C. 224 (1992)]

Court did not find "numerous" errors and, although defendant may not have received a perfect trial, he received a fair trial free of prejudicial error.

**Am Jur 2d, Appeal and Error § 789.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Downs, J.,* upon a jury verdict of guilty of first-degree murder, at the 13 and 20 May 1991 Criminal Sessions of Superior Court, BUNCOMBE County. Heard in the Supreme Court on 11 March 1992.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Elmore & Elmore, by David W. Cartner, for defendant.*

FRYE, Justice.

Defendant, Henry Ligon, Jr., was indicted by a Buncombe County grand jury on 4 February 1991 on charges of first-degree murder and discharging a firearm into occupied property. Defendant was tried noncapitally to a jury and found guilty on both counts on 22 May 1991. On appeal, defendant asks this Court to grant him a new trial, arguing that seven alleged errors by the trial judge, individually or cumulatively, deprived him of a fair trial. After a thorough review of the trial transcript, record on appeal, written briefs and oral arguments, we conclude that defendant received a fair trial, free of prejudicial error.

I.

The State's evidence showed that the victim, twenty-five-year-old Oscar Ray Walker, Jr., was shot to death on 27 November 1990 while attempting to steal cocaine from what can best be described as an outdoor drug supermarket in west Asheville. The State's first witness, George Alvin (Al) Davis, told jurors that on the evening of 27 November 1990, he was selling drugs for defendant at the intersection of Burton and Buffalo Streets in Asheville. More specifically, Davis testified that defendant supplied him with several small packets of cocaine to sell. Around 9 p.m., a yellow Volkswagen Rabbit driven by a "white fellow [with] stringy hair" pulled up to the intersection. Davis approached the car on the driver's side, asked the driver what he wanted and handed him a packet of cocaine. Davis then walked around to the passenger's

side of the car, opened the door and began to get inside to collect his money. Before Davis could sit down, however, the driver "hollered" at him to get out. Davis testified that he did as he was told, and the driver "throwed the car in gear and [took] off down the road." It was at this point, according to Davis, that the shots rang out. Davis said he turned around and saw "Mr. Ligon with the gun." Although Davis did not see defendant fire the gun, he testified that he saw defendant "on the sidewalk with the gun pointed down the street." Davis told jurors that the back windshield of the Volkswagen Rabbit was blown out, and the driver momentarily lost control of the car. The driver then regained control and "went on down Burton Street."

Ricky Morris was the State's next witness. He testified that he was currently in prison for selling drugs, and on the night in question he was selling drugs on Burton Street. Morris testified that he saw Davis approach a car and "then I seen him walk away from the car. I heard some shots, but I don't know where it came from." Morris said he did not see anyone with a gun. The State then impeached Morris with two prior inconsistent statements in which Morris said he saw defendant shoot at a yellow car.

Another witness for the State, Regina Hadden, testified that she was shooting pool at the community center on Burton Street the night Walker was shot. After hearing three gunshots, Hadden testified, she saw defendant put a gun in his pocket and heard him say, "That will teach people not to rip Burton Street off."

Asheville Police Detective Jon Kirkpatrick testified that on the evening of 27 November 1990, he was dispatched to a grassy area located at the off-ramp of I-240 at Brevard Road in Asheville. Upon his arrival, emergency medical personnel were removing the driver of a yellow Volkswagen from his car. The driver was subsequently identified as Oscar Ray Walker, Jr. Kirkpatrick testified that the distance from the I-240/Brevard Road off-ramp where Walker's car was found to the intersection where the shooting occurred is 2.65 miles.

Dr. Richard Landau, a pathologist at Memorial Mission Hospital, performed the autopsy on Walker. Landau testified that he found two bullet wounds on the body. Both bullets entered the victim's back. The cause of death, according to Dr. Landau, was a "gunshot wound with organ destruction and second hemorrhage." In layman's

terms, "there was massive destruction of the liver and he bled to death in combination with destruction of the lung."

Although the murder weapon was never recovered, the State presented a series of witnesses in an effort to place the murder weapon in the hands of defendant at the time of the shooting. First, Bobby Lynn Davidson, an Asheville bail bondsman, testified that on 6 October 1990, his 10-millimeter Delta Elite pistol was stolen by one of his clients, Greg Anderson. Anderson, whom Davidson had just bailed out of jail, stole the pistol from Davidson's pickup truck, Davidson testified. Davidson provided police with thirty-nine spent cartridge cases from his stolen pistol.

Greg Anderson followed Davidson to the witness stand and told jurors that he had, indeed, stolen Davidson's pistol on 6 October. Anderson testified that he immediately went to West Asheville and sold the weapon to defendant for $170.

Four days after the gun was stolen, on 10 October 1990, a man displaying defendant's driver's license purchased thirty rounds of Winchester and Remington 10-millimeter automatic ammunition from Finkelstein's store, according to the testimony of Finkelstein's employee Charles Bassett. Bassett testified that federal law requires that records be kept of pistol ammunition sales. Finkelstein's therefore requires identification from anyone purchasing pistol ammunition, and a copy of the sales ticket is retained for its records. On 10 October, Bassett testified, he sold ammunition to someone with Henry Ligon's driver's license. Bassett copied the name, date of birth, address and license number from the driver's license onto the sales ticket. The store's copy of this ticket was later introduced into evidence; another witness, Detective Kirkpatrick, testified that the information on Finkelstein's ticket matched the information on a certified copy of defendant's driver's license obtained from the North Carolina Division of Motor Vehicles. On cross-examination, however, Bassett conceded that he could not identify the person to whom he had sold the ammunition.

Detective Kirkpatrick told jurors that two days after the shooting he and another police officer found a spent 10-millimeter cartridge case in a dirt area at the intersection of Burton and Buffalo Streets—the same intersection where the shooting occurred.

Finally, in an attempt to tie together all these pieces of evidence, the State called to the witness stand firearms expert Gerald F.

## STATE v. LIGON

[332 N.C. 224 (1992)]

Wilkes of the Federal Bureau of Investigation in Washington, D.C. Wilkes testified that, at the request of Asheville police, he compared the thirty-nine spent cartridge cases from bail bondsman Anderson's stolen pistol with the spent cartridge case found at the scene of the crime. The cartridge case found at the scene, Wilkes testified, was made by Winchester. Wilkes said that, in his opinion, the Winchester cartridge case from the crime scene and the cartridge cases from Anderson's pistol "were all fired in one weapon."

Defendant did not testify but presented evidence that the victim was intoxicated on the night of the shooting, had gone to Burton Street to steal cocaine, and that it was possible the victim had fired the first shots.

Thomas Cleveland Trull was a friend of the victim, Oscar Walker. On the night of the shooting, Walker, who lived with his parents, had gone to Trull's house to watch movies and "drink a little bit." After a few drinks, Walker told Trull that he was going to Burton Street to "rip off some niggers." In a statement to police after the shooting, Trull had said that Walker was intoxicated when he left Trull's house, and that Trull had tried to talk him into spending the night.

Dr. Landau, the pathologist, testified on cross-examination that he performed two tests to determine Walker's alcohol level at the time of his death. The blood ethanol test registered .15; the urine ethanol test registered .29—both above the .10 legal limit in North Carolina.

Anthony DeWayne Summey, Walker's best friend, testified that Walker was not a violent person and he had never seen Walker with a gun. "He was very gentle. Oscar, he'd never been in a fight in his life." However, in a statement to police after the shooting, Summey said that Walker would get "brave" after he had been drinking.

Finally, S.B.I. Agent and forensic chemist Charles Frank McClelland, Jr., testified that he conducted tests on Walker's hands to determine whether Walker had fired a gun on the night in question. McClelland, at the request of defendant's attorney, read to the jury his conclusion, contained in a written report, that, "these [test] results do not eliminate the possibility that [Walker] could have fired a gun." Pressed on cross-examination, however,

McClelland· acknowledged that, "[b]asically what [the report] says is I don't have an opinion as to whether or not he shot a gun."

Defendant was convicted of discharging a firearm into occupied property, a motor vehicle, and first-degree murder based on the felony murder rule. The jury specifically did not find defendant guilty of first-degree murder based on malice, premeditation and deliberation. Judge Downs sentenced defendant to life imprisonment for the first-degree murder conviction. No sentence was imposed for discharging a firearm into occupied property, that felony having merged into the first-degree felony murder conviction. Defendant appeals to this Court as of right. N.C.G.S. § 7A-27(a) (1989).

## II.

[1]  In his first assignment of error, defendant argues that the trial judge erred by allowing into evidence a sales ticket and testimony concerning the purchase of ammunition from Finkelstein's. We agree with the State that this evidence was admissible under N.C.G.S. § 8C-1, Rule 803(6), the business records exception to the hearsay rule.

North Carolina Rule of Evidence 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(6) Records of Regularly Conducted Activity.—A memorandum, report, record, or date compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

N.C.G.S. § 8C-1, Rule 803(6) (1988). State's witness Charles Bassett, an employee of Finkelstein's, testified that federal law requires

a record be kept of pistol ammunition sales. It is the regular practice of Finkelstein's, therefore, to ask for identification when selling pistol ammunition and to record certain information on a sales ticket. Finkelstein's then keeps a copy of the ticket for its records. On 10 October 1990, Bassett testified, he sold 10-millimeter ammunition to someone who presented a driver's license bearing the name Henry Ligon. Bassett recorded the name, license number, address, and date of birth on the sales ticket. Bassett, on cross-examination, was unable to identify defendant as the person who had purchased the ammunition and presented the driver's license.

The use of the sales ticket in this case fits neatly within the parameters of Rule of Evidence 803(6): the sales ticket was filled out by Bassett at the time the driver's license was presented to him; it was kept in the course of a regularly conducted business activity; it was the regular practice of the business to keep such a record; and Bassett, the person who sold the ammunition and made out the sales ticket, was qualified to give the testimony. We hold, on the facts of this case, that the sales ticket was properly admitted into evidence under Rule of Evidence 803(6). *See State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988) (federal firearms' form filled out by the defendant and gun salesman properly admitted into evidence under Rule of Evidence 803(6) ).

Defendant argues, however, that notwithstanding Rule of Evidence 803(6), the sales ticket should have been excluded under this Court's decisions in *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), and *State v. Austin*, 285 N.C. 364, 204 S.E.2d 675 (1974). Defendant is mistaken. In *Fulcher* and *Austin*, this Court held that it was error for motel registration cards bearing the purported signatures of the respective defendants to be admitted into evidence. *Fulcher*, 294 N.C. at 515, 243 S.E.2d at 346-47; *Austin*, 285 N.C. at 367, 204 S.E.2d at 676-77. The reasoning in both cases was identical: the signatures had not been *authenticated*, that is, the State did not present evidence in either case that it was actually the respective defendants who had signed the cards. *Fulcher*, 294 N.C. at 515, 243 S.E.2d at 346-47; *Austin*, 285 N.C. at 367, 204 S.E.2d at 676-77. In this case, the authenticity of the sales ticket is not in dispute. Bassett is the person who saw defendant's driver's license, made out the sales ticket and testified at trial. No one disputes that Bassett wrote on the sales ticket what he saw on the driver's license. On cross-examination, Bassett conceded that

STATE v. LIGON

[332 N.C. 224 (1992)]

he could not identify defendant as the man who purchased the ammunition; he could only testify that someone with defendant's driver's license purchased the ammunition. We agree with the State that the witness' failure to identify defendant as the man who presented the driver's license goes to the *weight* and not the *admissibility* of the evidence. This assignment of error is rejected.

In his next assignment of error, defendant makes at least four different arguments: (1) the trial judge erred by allowing testimony about defendant's character as it related to his drug dealings; (2) the trial judge erred by allowing testimony that the neighborhood where the shooting occurred has a reputation as an area where drugs are frequently bought and sold; (3) the trial judge erred by allowing the jury to see several documents which listed defendant as a "suspect" in Walker's murder; and (4) the trial judge erred by allowing character testimony concerning the reputation and propensity for violence of defendant and defendant's family. We will address each argument separately.

[2] First, defendant argues that the trial judge erred by allowing testimony about defendant's drug dealings. For example, State's witness Al Davis testified that, on the night of the shooting, defendant gave him several packets of cocaine to sell. Davis also testified that he had sold drugs for defendant in the past, earning an average of $1,000 per week. Defendant argues that testimony concerning defendant's drug dealings was inadmissible character evidence used to inflame jurors. The State argues that this testimony was admissible under Rule of Evidence 404(b). We agree with the State.

Rule of Evidence 404(b) provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of *motive*, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1988) (emphasis added). In recent years, this Court has emphasized that Rule of Evidence 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion *if its only* probative value is to show that the defendant

**STATE v. LIGON**

[332 N.C. 224 (1992)]

has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990); *see also State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990); *State v. Jeter*, 326 N.C. 457, 389 S.E.2d 805 (1990). On the facts of this case, we agree with the State that the disputed evidence was relevant to show defendant's motive for murder. The State contended at trial that Walker was shot as he attempted to steal cocaine belonging to defendant. State's witness Regina Hadden testified that immediately after the shooting she heard defendant say, "That will teach people not to rip Burton Street off." Without the knowledge that defendant sold cocaine on Burton Street, the State's case would have made little, if any, sense. We hold this evidence was properly admitted under Rule of Evidence 404(b).

[3] Next, defendant argues that the trial judge erred by allowing testimony that the neighborhood where the shooting occurred has a reputation of being an area where drugs are frequently bought and sold.

Defendant is correct that the "applicable general rule is that in a criminal prosecution evidence of the reputation of a place or neighborhood is ordinarily inadmissible hearsay." *State v. Weldon*, 314 N.C. 401, 408, 333 S.E.2d 701, 705 (1985). However, it is noteworthy that the specific holding in *Weldon*, a drug trafficking case, is that "the trial court erred in admitting at defendant's trial *for trafficking in heroin* evidence that defendant's house had a reputation as a place where illegal drugs could be bought and sold." *Id.* at 411, 333 S.E.2d at 707 (emphasis added); *see also State v. Tessnear*, 265 N.C. 319, 144 S.E.2d 43 (1965) (error to admit testimony that the defendant's house had the general reputation of having whiskey for sale when defendant charged with possession of nontaxpaid liquor at his premises); *State v. Crawford*, 104 N.C. App. 591, 410 S.E.2d 499 (1991) (error to admit testimony about the reputation of defendant's neighborhood when defendant charged with drug offenses).

In the instant case, defendant was not charged with any drug offense; he was charged with first-degree murder and discharging a firearm into occupied property. Testimony concerning the reputation of the neighborhood was offered, not because it proved that defendant was guilty of selling drugs, but because it explained why the victim went there in the first place, and why defendant was

**STATE v. LIGON**

[332 N.C. 224 (1992)]

at the scene. This testimony merely set the scene. On the facts of this case, we hold that the trial court did not err by admitting the disputed evidence.

**[4]** Next, defendant argues that the trial judge erred by allowing jurors to see documents from the Asheville Police Department, S.B.I. and F.B.I., which identified defendant as the suspect in Walker's murder. Defendant does not argue that the documents were otherwise inadmissible, only that references to defendant as the "suspect" in Walker's murder should have been deleted. It seems obvious that any criminal defendant standing trial before a jury is, by definition, a suspect in the case. Thus, even assuming error, defendant certainly cannot demonstrate that he suffered prejudice. *See* N.C.G.S. § 15A-1443(a) (1988) (to receive a new trial, defendant must demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial"). This assignment of error is without merit.

Finally, defendant argues the trial judge erred by allowing testimony concerning his and his family's reputation and propensity for violence. Defendant argues that this evidence was inadmissible as its sole purpose was to show defendant's bad character. The disputed testimony is part of an out-of-court statement made by State's witness Ricky Morris and introduced by the State to impeach Morris' testimony at trial. This prior statement is also the subject of defendant's next assignment of error. We will therefore consider the admissibility of this testimony when we address defendant's next assignment of error.

**[5]** In his third assignment of error, defendant argues that the trial judge erred by allowing into evidence three out-of-court statements for purposes of corroboration and impeachment: one out-of-court statement by State's witness Al Davis, and two out-of-court statements by State's witness Ricky Morris. By "out-of-court statement" we mean any statement made by the witness other than while testifying at defendant's trial. We will address each statement individually.

Defendant first argues that the trial judge erred by allowing Detective Kirkpatrick to read to the jury a statement made by Al Davis to police. Prior to Detective Kirkpatrick reading the statement, the trial judge admonished jurors that the out-of-court statement was being admitted for corroboration purposes only. We agree

with the State that this out-of-court statement was consistent with Davis' in-court testimony and was therefore admissible for corroboration purposes.

It is now well settled that "[t]o be admissible as corroborative evidence, prior consistent statements must corroborate the witness' testimony, but the corroborative testimony may contain 'new or additional information when it tends to strengthen and add credibility to the testimony which it corroborates.'" *State v. Howard*, 320 N.C. 718, 724, 360 S.E.2d 790, 794 (1987) (citations omitted) (quoting *State v. Kennedy*, 320 N.C. 20, 25, 357 S.E.2d 359, 368 (1987)); *see also State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991); *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48; *State v. Ramey*, 318 N.C. 457, 349 S.E.2d 566 (1986). The State cannot, however, introduce prior statements which "'actually directly contradict[ ] . . . sworn testimony.'" *McDowell*, 329 N.C. at 384, 407 S.E.2d at 212 (quoting *State v. Burton*, 322 N.C. 447, 451, 368 S.E.2d 630, 632 (1988)).

After a careful review of Davis' trial testimony and his statement to police, we conclude that the out-of-court statement was properly admitted to corroborate Davis' in-court testimony. The out-of-court statement tracks almost exactly Davis' description of what took place the night of the shooting. The only "new information" in the out-of-court statement consists of minor details which, we believe, strengthen and add credibility to Davis' in-court testimony. For example, in his in-court testimony, Davis says that he handed the victim a packet of cocaine through the driver's side window and then went around to the passenger's side to get into the car. In his statement to police, Davis added that he handed the packet of cocaine to Walker because, "the driver wanted to taste it." This "new information" certainly does not contradict Davis' in-court testimony; instead, it merely explains why Davis handed the cocaine to Walker before collecting his money. We hold that the trial judge did not err by allowing Davis' out-of-court statement to corroborate his in-court testimony.

**[6]** Next, defendant argues that the trial judge erred by allowing into evidence two out-of-court statements to impeach and/or corroborate the testimony of State's witness Ricky Morris. Shortly after calling Morris to the witness stand, the following exchange took place between Morris and prosecutor Ronald Moore:

STATE v. LIGON

[332 N.C. 224 (1992)]

Q. All right. Tell the ladies and gentlemen what you saw when that car drove up [on Burton Street], exactly.

A. I seen—I think it was Al Davis. He went up to the car, and then I seen him walk away from the car. I heard some shots, but I don't know where it came from.

Q. Are you afraid being here testifying today.

MR. LINDSAY: [defense counsel]: Objection.

COURT: Overruled.

A. Not really.

Q. All right. You heard some shots?

A. Yep.

Q. Did you look to see from where those shots came from?

A. Yep.

Q. Did you see somebody with a gun?

A. Nope.

Following this exchange, two out-of-court statements were read to the jury: (1) a lengthy transcript of Morris' sworn testimony from a sentencing hearing a few months earlier at which Morris pled guilty to an unrelated crime; and (2) a written statement Morris had given to police.

During the earlier sentencing hearing, Morris was questioned about what he had seen the night Walker was killed. In contrast to his testimony at defendant's trial, Morris said during the sentencing hearing that, "[t]he truth is I seen [defendant] shoot off in that car." In addition to this statement, however, the jury was read numerous other statements made by Morris during the sentencing hearing, such as: (a) defendant was the person who first gave Morris drugs, after which Morris "got hooked"; (b) Morris was afraid of defendant's family; (c) defendant's family was not "stable"; (d) Morris was pressured by members of defendant's family into signing a statement saying that he had lied to police about what he had seen the night of the shooting; (e) Morris had seen defendant's stepfather cut a man with a knife; (f) Morris heard a "lot of people" say defendant was the person who shot Walker; and (g) Morris had seen defendant purchase weapons.

STATE v. LIGON

[332 N.C. 224 (1992)]

At oral argument, defendant's attorney conceded that it was proper for the State to impeach Morris with prior inconsistent statements concerning what he had seen the night of the shooting; however, defendant's attorney argued that the trial judge erred by allowing the prosecutor, under the guise of impeaching his own witness, to get before the jury otherwise inadmissible evidence. *See State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989) (impeachment by prior inconsistent statement of State's own witness should not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible). The State, at oral argument, conceded that the trial judge probably should have excluded some of the statements set out above, but argued that any error was not prejudicial to defendant.

We agree with both parties that the trial judge did not err by allowing the prosecutor to impeach Morris with his prior inconsistent statements concerning what he had seen the night of the shooting. We also agree with both parties that some of Morris' other statements from the prior sentencing hearing should not have been read to the jury. For example, Morris' statement which suggested that defendant was the person who got him hooked on drugs neither impeached Morris' credibility nor corroborated his testimony at trial, and therefore should have been excluded. However, even assuming, *arguendo*, that only Morris' prior inconsistent statements about the shooting were properly allowed, we agree with the State that, given the evidence against defendant, he cannot demonstrate prejudice and therefore is not entitled to a new trial.

In order to receive a new trial, defendant has the burden of showing that there was a reasonable possibility the jury would have reached a different verdict had the error in question not been committed. N.C.G.S. § 15A-1443(a). Defendant cannot meet this burden. Al Davis testified that he saw defendant pointing a gun down the street immediately after hearing shots fired. Regina Hadden said she saw defendant put a gun in his pocket immediately after hearing gunshots and heard defendant say, "That will teach people not to rip Burton Street off." The State's evidence also showed that a cartridge case found at the scene of the crime came from the same 10-millimeter pistol which Greg Anderson testified he had sold to defendant less than two months before the shooting. Charles Bassett testified that he had sold 10-millimeter ammunition to someone with defendant's driver's license just four days after

Anderson said he sold the 10-millimeter pistol to defendant. Finally, defendant concedes that Morris' prior statement that he saw defendant shoot into the car was properly admitted to impeach his in-court testimony that he did not see anyone with a gun immediately after the shooting. Although other portions of Morris' prior statement were not flattering to defendant and his family, defendant cannot demonstrate that, had this evidence not been admitted, there was a reasonable possibility that the jury would have found him not guilty of felony murder.

Finally, defendant argues in his brief that the trial judge erred by allowing Morris to be impeached by another prior inconsistent statement—one he made to police after the shooting. The gist of that statement is that Morris saw Al Davis approach a yellow car and give the driver a packet of cocaine; the car then sped off, and defendant shot at the car with a 10-millimeter pistol. We agree with the State that this statement contradicted Morris' in-court testimony, and it was therefore proper for prosecutors to use this statement to impeach Morris' credibility.

[7] In his next assignment of error, defendant argues that the trial judge erred by not instructing the jury on the lesser included offense of voluntary manslaughter. Defendant argues there was evidence at trial that Walker was intoxicated on the night of the shooting and admitted to his friend that he was going to Burton Street to steal cocaine. There was also evidence, defendant argues, that the victim might have fired a gun at the crime scene. Thus, concludes defendant, there was evidence to support a voluntary manslaughter instruction based on two theories: (a) imperfect self-defense; and (2) killing under heat of passion upon sudden provocation.

It is, of course, "an elementary rule of law that a trial judge is required to declare and explain the law arising on the evidence and to instruct according to the evidence." *State v. Strickland,* 307 N.C. 274, 284, 298 S.E.2d 645, 652 (1983). The trial judge is not required, however, to instruct the jury on lesser included offenses " 'when there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees.' " *Id.* (quoting *State v. Shaw,* 305 N.C. 327, 342, 289 S.E.2d 325, 333 (1982) ). Thus, the question in this case is whether there was evidence adduced at trial to support either of defendant's theories. We hold there was not.

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation.

**STATE v. LIGON**

[332 N.C. 224 (1992)]

*State v. Norris*, 303 N.C. 526, 529, 279 S.E.2d 570, 572 (1981). Under the law of imperfect self defense, a person may be found guilty of voluntary manslaughter if: (1) the person believed it necessary to kill the deceased in order to save himself from death or great bodily harm; *and* (2) the person's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; *but* (3) the person, without murderous intent, was the aggressor in bringing on the difficulty, *or* (4) the person used excessive force. *Id.* at 530, 279 S.E.2d at 573; *accord State v. McAvoy*, 331 N.C. 583, 417 S.E.2d 489 (1992). Even assuming defendant's version of the evidence is accurate,[1] he still would not be entitled to an instruction on voluntary manslaughter based on the law of imperfect self defense. The undisputed evidence at trial was that the back windshield of Walker's car was blown out by gunshots, and that two bullets entered Walker's *back* as he drove away in his car. There was absolutely no evidence that defendant believed it necessary to kill Walker in order to save himself from death or great bodily harm. Furthermore, even if he had such a belief, it certainly would not have been reasonable, given that Walker's car was speeding away when the shots were fired.

[8] Defendant also argues that he was entitled to an instruction on voluntary manslaughter because there was evidence that he acted in the heat of passion upon adequate provocation. In order to be entitled to an instruction based on this theory, there must be evidence that: (1) defendant shot Walker in the heat of passion; (2) this passion was provoked by acts of the victim which the law regards as adequate provocation; and (3) the shooting took place immediately after the provocation. *See State v. Weeks*, 322 N.C. 152, 173, 367 S.E.2d 895, 908 (1988). Again, accepting defendant's version of the evidence as accurate, there was absolutely no evidence that defendant shot Walker in the heat of passion upon adequate provocation. To the contrary, the evidence indicates that defendant watched as Walker took a packet of cocaine from one of defendant's surrogates; that Walker took off down the street without paying;

---

1. Although S.B.I. Agent McClelland concluded in his report that test results "do not eliminate the possibility that [Walker] could have fired a gun," when pressed on cross-examination, he acknowledged that, "[b]asically what [the report] says is I don't have an opinion as to whether or not [defendant] shot a gun." Thus, it is by no means clear that there was evidence that Walker fired a gun at the crime scene.

and that defendant then shot at Walker's car as it fled the scene. Even if Walker fired a pistol, there was no evidence it was fired at defendant. Indeed, there was no evidence that Walker and defendant ever spoke or even saw one another. While defendant may have been "provoked" that Walker stole his cocaine, that is hardly what the law regards as "adequate provocation." This assignment of error is without merit.

[9] In his fifth assignment of error, defendant argues the trial court erred by failing to instruct the jury on the law of perfect self-defense. The first two elements of perfect self-defense are identical to the first two elements of imperfect self defense. *See Norris*, 303 N.C. at 530, 279 S.E.2d at 572-73. For the reasons set out above, this assignment of error is rejected.

[10] In his next assignment of error, defendant argues the trial judge erred by denying defense counsel's request for a jury instruction on "mere presence." We disagree.

If a party requests a jury instruction which is a correct statement of the law and which is supported by the evidence, the trial judge must give the instruction at least in substance. *State v. Fullwood*, 323 N.C. 371, 390, 373 S.E.2d 518, 529 (1988), *death sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). Defendant is correct that the "mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense." *State v. Sanders*, 288 N.C. 285, 290, 218 S.E.2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 47 L. Ed. 2d 102 (1976). Thus, if there was evidence at trial that defendant was "merely present" at the scene, the trial judge should have instructed the jury on this principle of law. We agree with the State, however, that there was no evidence presented at trial to support this instruction.

Two witnesses testified that they saw defendant at the scene of the crime on the night of the murder: Al Davis testified that he saw defendant pointing a gun at the victim's car; and Regina Hadden testified that she saw defendant put a gun in his pocket immediately after hearing gunshots, and heard him make an incriminating statement. Ricky Morris testified that he saw Al Davis approach a car and heard gunshots, but did not see anybody with a gun. On cross-examination, Morris added he did not see defendant on the street when the shots were fired. In sum, witnesses either

saw defendant with a gun in his hand after hearing gunshots, or did not see him at all. Thus, there was no evidence that defendant was "merely present" at the scene. This assignment of error is without merit.

[11]   In his seventh assignment of error, defendant argues he is entitled to a new trial because of "improper and prejudicial comments" made by the prosecutor during closing argument. Specifically, defendant argues that the prosecutor repeatedly accused defense counsel of raising "smoke screens," thus questioning defense counsel's integrity and truthfulness.

Four times during his closing argument, the prosecutor mentioned "smoke" or "smoke screen" to describe how defense counsel was trying to obscure the fact that defendant was guilty of murder. Defendant concedes in his brief that defense counsel did not object to the use of these phrases; thus, "appellate review is limited to whether the prosecutor's remarks were so extremely or grossly improper that the trial court should have intervened on its own motion." *State v. Shaw*, 322 N.C. 797, 806, 370 S.E.2d 546, 551 (1988). Assuming arguendo that the prosecutor's closing argument may be viewed as questioning his opponent's integrity, we agree with the State that the prosecutor's comments in this case were not so grossly improper as to require the trial judge to intervene *ex mero motu*. Cf. *U.S. v. De La Vega*, 913 F.2d 861, 872 n.11 (11th Cir. 1990) (improper for prosecutor to argue that defense tactics were "smoke screens"; however, error held harmless), *cert. denied*, --- U.S. ---, 114 L. Ed. 2d 99 (1991); *McGee v. State*, 435 So. 2d 854, 859 (Fla. Dist. Ct. App. 1983) ("smoke screen" argument condemned; however, error held harmless), *rev. denied*, 444 So. 2d 417 (Fla. 1984).

[12]   Finally, defendant argues that, even if this Court does not find that any one error, standing alone, requires a new trial, the cumulative effect of "numerous" errors deprived him of a fair trial. *See State v. White*, 331 N.C. 604, 419 S.E.2d 557 (1992) (defendant entitled to new trial because, when considered cumulatively, errors prevented him from receiving a fair trial). We did not find "numerous" errors in defendant's trial. Although defendant may not have received a "perfect" trial, we are confident, after a thorough review of his case, that he received a fair trial, free of prejudicial error.

No error.